W. W. PEGRAM v. CHARLOTTE, COLUMBIA & AUGUSTA RAILROAD COMPANY.

*Agent and Principal—Contract—Fiduciary Relation.*

Plaintiff, station agent of a railroad company, sues the company in damages for breach of an alleged contract in failing to furnish a train for an excursion. Upon correspondence had the company supposed the train was intended for a third party and agreed to supply it on cert

terms, but afterwards refused on discovering that plaintiff was attempt-
ing to procure it for his own benefit; *Held*, that plaintiff could not
from his fiduciary relation towards the company enter into a binding
contract with it for such purpose, unless it agreed thereto after being
fully advised of all the circumstances.

(*Brunhild* v. *Freeman*, 77 N. C., 128; *Pendleton* v. *Jones*, 82 N. C.,
249, cited and approved.)

CIVIL ACTION tried at Fall Term, 1880, of MECKLENBURG
Superior Court, before *Seymour, J.*

Verdict and judgment for plaintiff, appeal by defendant.

*Messrs. Shipp & Bailey*, for plaintiff.
*Messrs. Wilson & Son*, for defendant.

SMITH, C. J.   The action is for damages for breach of a
contract alleged to have been entered into by the defendant
for the hire of two excursion trains to be run over the rail-
road, one between Charlotte and Augusta, the other between
Charlotte and Columbia, in the month of May, 1875.   The
answer explains the correspondence between the plaintiff
and the general superintendent of the company, in whom
was vested authority to contract for the running of trains
over the road, denies the existence of the alleged contract,
and insists that, if made, it was procured through circum-
vention and fraud practiced by the plaintiff and is void.
No specific questions of fact, growing out of the opposing
allegations, were framed, but the entire controversy was sub-
mitted to the jury who find " the issues in favor of the
plaintiff and assess his damages at seven hundred and
seventy-five dollars."   On the trial the plaintiff, testifying
for himself, stated that during the year 1875 he was station
agent for the defendant company at Charlotte, and had the
supervision of the depot and business at that place; that he
addressed to the general passenger and freight agent of the

company at Columbia two letters of same date and in the following words:

[1]          " C. C. & A. R. R., CHARLOTTE AGENCY,

March 1st, 1875.

*A. Pope, Esq., G. F. A., Columbia:*

Ferry Morehead, colored, wants to know price of an excursion train of five coaches and one baggage car, Augusta to Charlotte and back; leaving Augusta 19th May, and returning, leave Charlotte 9 a. m., 21st May, 1875.

Respectfully,

W. W. PEGRAM, Agent."

[2]   " Please let me know the lowest price for engine, five coaches and baggage car, Columbia to Charlotte and back with privilege of running between Charlotte and the fair grounds during the day, leaving Columbia five or six o'clock a. m., 20th May, and returning, leave Charlotte 12:30 a. m., 21st of May." (Written at Charlotte Agency and signed by W. W. Pegram.)

That in reply the said Pope wrote to the plaintiff that the trains from Augusta to Charlotte could be forwarded for $400, and from Charlotte to Columbia for $250; that the plaintiff on March 18th sent a telegraphic message to Pope that he thought both trains would be taken, and asking him not to make any other arrangement until he should hear further, and soon after he wrote to Pope in the following terms, from the Charlotte Agency under date of March 25th, 1875:

" Both trains of which I wrote you, about 1st March, have been taken. You will please arrange accordingly. The one for Columbia should be made up of the very best cars, as it is intended for whites entirely." (Signed by W. W. Pegram, Agent.)

This was the evidence offered in support of the contract, and the plaintiff further testified that it was made in contemplation of the intended commemoration of the centennial

of the Mecklenburg declaration of May 20th, which was expected to attract and did in fact attract large numbers to Charlotte, and from the refusal to supply the trains the plaintiff suffered a large loss in profits. The testimony of the general superintendent, who had authority to enter into such arrangements, was in substance that he was wholly ignorant of the approaching celebration and of the increased travel in consequence about that date, and no information was given him by the plaintiff or others, and that as soon as he discovered that the plaintiff was attempting to procure trains for his own use, he promptly refused to let them go. A series of instructions was asked for the appellant, unnecessary to be set out in detail, but which are embodied in these propositions:

1. The plaintiff's agency and its consequent fiduciary obligations incapacitated him from making a contract with the company, creating adverse relations between them within the scope of such agency.

2. A contract thus obtained without a full disclosure of all matters affecting the interests of his principal and known to the agent would be fraudulent and void.

3. The plaintiff was bound to look after and promote the interests of the company, and could not without its full knowledge of all the material facts by means of the attempted contract advance his own at the expense and to the injury of his employer.

4. The burden of showing that the company possessed the necessary information and his own good faith devolved upon the plaintiff.

5. There was no evidence the company had such information.

6. The measure of damages in case of recovery is the excess above the contract price, of the earnings of the road in its ordinary runnings and not the extraordinary occasion to which the contract had reference.

The instructions were not given and in their place the following: The plaintiff was bound to communicate to the superior agent with whom he was dealing all the information he possessed which was material to the interests of their common principal in determining upon the proposed contract, and that he was acting for himself; and he must have acted with the utmost good faith of which proof must come from him. It was not necessary however for him to give information of facts which he might reasonably assume to be known to all and were known to his superior agent—as for illustration, that the 4th day of July is a national holiday. The Mecklenburg celebration is not of the kind of which notice is presumed. If this centennial celebration was of such general notoriety as to be known to Pope or the general agents of the company, having charge of such contracts, and was in fact so known to them, then the failure of the plaintiff to convey this information would not defeat his action. This he must show. The defendant, if uninformed by the plaintiff or otherwise of the contemplated proceedings in May and the plaintiff at the date of the contract was acting as its agent, could terminate it and would not become liable. The damages, if any, are such as may be reasonably supposed to have been contemplated by the parties at the time as the probable results of the breach of the contract.

The correspondence between the plaintiff, the subordinate, and Pope, the superior agent, both in the service of a common principal, furnishes the evidence of the contract on which the action is based. It does not show upon its face that the plaintiff was seeking to enter into a personal contract for his own individual advantage with his employer. His first letter is one of inquiry for Ferry Morehead who "wants to know price of excursion train," has the usual agency heading and is signed by himself as "*agent*." The second, bearing the same date, and the same general im-

press, except that the signature is without the "agency," would reasonably be associated with the other in its purposes and be interpreted in the same way. In neither is there any indication of a direct personal interest in the subject of the inquiry on the part of the writer. They would both most naturally be understood as a communication between the two agents of the same company, the one asking and the other furnishing information for some outside party. The telegraphic message is in keeping with the letters—the plaintiff saying to his superior on the 18th of March that "he thought that both trains would be taken" and asking that no other arrangement be made until he heard further—language implying that the acceptance of the proposition depended on the will of another, not on that of the writer. The letter of acceptance is of similar import, declaring *that both trains have been taken*, as if the act had been consummated between himself and another, and he was now communicating the fact to the superior agent. No where does the plaintiff profess or appear to be acting for himself and for his personal benefit, and so the matter seems to have been understood by Pope, who testifies that as soon as it came to his knowledge that the centennial celebration was to come off and that the "plaintiff had procured a train for his own use and benefit * * * * he refused to allow the plaintiff to have the trains." The several inter-communications do not disclose any common understanding—that *aggregatio mentium*—the essential element in a valid agreement. Pope seems to have received the plaintiff's messages (and this interpretation is warranted by the terms used and their relations as employees in the same general service) as conveyed in the interest of the company, and not for the advancement of his own profit; and his undiscovered intention, even in the absence of any third party, cannot constitute a contract with his principal any more than with Pope himself. The existence of a contract depends upon a mutual agreement,

and its binding force results not from what either intended but what both concurred in. *Brunhild* v. *Freeman*, 77 N. C., 128 ; *Pendleton* v. *Jones*, 82 N. C. 249. The point is not distinctly presented in the instructions asked and refused, but it is in our opinion substantially involved in the first in connection with the others, that the plaintiff could not from his fiduciary relations towards the company enter into a binding contract with it. This was in effect a request that the judge charge the jury that no legal contract was created between the plaintiff and his employer, and there was error in refusing to so charge. The law in harmony with sound morals refuses its sanction to any measure, though assuming the form of contract, procured by a fiduciary from his principal in violation of the trusts reposed in him, and to the injury of the latter, at least unless such principal is fully advised of all the circumstances and knows at the time that he is dealing with one, then divested of his agency, and acting in an adversary and independent capacity. The cases and authorities cited for the appellant fully support this doctrine. *Story Ag.*, § 211 *et seq ; Ringo* v. *Binns*, 10 Peters, 269 ; *Dunn* v. *English*, 10 Moak, 846. For the error pointed out there must be a new trial.

Error. *Venire de novo.*