CRESSWELL RANCH & CATTLE CO., Limited, v. MARTINDALE et al.

(Circuit Court of Appeals, Eighth Circuit. July 16, 1894.)

No. 421.

1. CONTRACT OF SALE—BREACH BY VENDEE—EFFECT.

Where the vendee of cattle to be delivered and paid for in installments refuses, upon demand of the vendor, to accept and pay for a substantial part of an installment according to contract, he cannot thereafter recover against the vendor for a refusal to deliver further installments.

2. SAME—GOOD FAITH OF VENDEE—MATERIALITY.

Where a contract for the sale of cattle provides that the vendees may reject "any objectionable steer that may not weigh 900 pounds," and, without actually weighing the cattle, the vendees reject, as weighing less than 900 pounds, a large number which weigh more than that amount, the fact that such erroneous rejection is made in good faith is immaterial on the question of the vendor's right to refuse further performance of the contract.

3. REVIEW ON APPEAL—ERRONEOUS INSTRUCTION.

A general verdict cannot be upheld where there are several issues tried, and error is committed in charging the jury upon any one of them.

In Error to the Circuit Court of the United States for the Western District of Missouri.

Action by William Martindale and Thomas J. Price against the Cresswell Ranch & Cattle Company, Limited, for a breach of contract to deliver cattle. The district court rendered a decree for the plaintiffs. Defendant appeals.

O. H. Dean and L. C. Krauthoff (William Warner, James Gibson, W. D. McLeod, J. V. C. Karnes, Daniel B. Holmes, and Edwin A. Krauthoff, on the brief), for plaintiff in error.

S. W. Moore (Gardiner Lathrop, Thomas R. Morrow, and John M. Fox, on the brief), for defendants in error.

Before CALDWELL and SANBORN, Circuit Judges, and THAYER, District Judge.

SANBORN, Circuit Judge. If the vendee of personal property, to be delivered and paid for in installments, refuses, upon the demand of the vendor, to accept and pay for a substantial part of an installment according to the contract, will the fact that he does so in good faith, and in the belief that he is not required by the contract to receive any of the property so rejected, deprive the vendor of his right to refuse to further perform the contract on his part? This is the principal question presented by this case.

September 19, 1892, the Cresswell Ranch & Cattle Company, Limited, a corporation, the plaintiff in error, sold to William Martin-

dale and Thomas J. Price, the defendants in error, 5,021 steers, 1,321 of which were to be delivered not later than October 20, 1892, and the remaining 3,700 at the rate of 1,000 each week, commencing October 24, 1892. The vendees agreed to pay $28 per head for the cattle, and at the date of the contract paid $5,000, which was to be applied to the payment for the cattle as they were delivered at the rate of $1 per head. The 3,700 cattle were part of a herd of cattle owned by the vendor that was on a range in Texas, 40 miles square, and the contract provided that when any installment of these cattle was ready to load upon the cars the vendees should be notified, and might cut out any of the steers gathered that did not weigh 900 pounds. After the 1,321 cattle and two installments of the 3,700 had been delivered and paid for, making in all 2,289 steers, the parties met on November 14, 1892, for the fourth delivery, and the vendor tendered, and demanded that the vendees should receive, 980 steers that weighed over 900 pounds each, and that complied with the other requirements of the contract. The vendees cut out and refused to accept or pay for 282 of these cattle, on the ground that they did not weigh 900 pounds each, but accepted and paid for the remaining 698. Before the time for another delivery arrived, the vendor notified the vendees that they had violated the contract on their part by rejecting the 282 steers, and that the cattle company would deliver no more cattle to them thereunder. The vendees then brought this suit for damages for the failure of the vendor to deliver the remainder of the cattle specified in the contract, and for the balance of the $5,000 not yet applied to the payment for the cattle already delivered. The vendor answered that the vendees had committed the first breach by failing to receive and pay for the 282 cattle tendered November 14, 1892. At the close of the trial the court instructed the jury, in effect, that the mere fact that the vendees refused to accept the steers that complied with the contract on November 14, 1892, did not relieve the vendor of its obligation to make tender of the remainder of the 5,021 steers due under the contract, if the jury further found that the vendees made the rejection in good faith, in the belief that the rejected steers did not come up to the requirements of the contract. The court also refused to charge, as requested by the vendor, that the rejection of these steers entitled it to treat this action as a breach of the contract, and that, if the vendor notified the vendees that it so elected in a reasonable time after the rejection, the latter could not recover. The court also instructed the jury that, although they found that the vendor tendered and the vendees refused to accept cattle that fulfilled the requirements of the contract, yet, if the vendor had subsequently waived that breach of the contract, the vendees could recover damages for the failure of the vendor to make the subsequent deliveries. There was a verdict and judgment for the vendees for damages for the failure of the vendor to deliver the steers due subsequent to November 14, 1892. But the jury found that the 282 steers tendered and rejected on that day fulfilled the requirements of the contract, and gave the vendees no damages on account of those steers. The verdict does not disclose whether the jury found

that the vendees' breach of the contract on November 14, 1892, was excused because they made it in good faith or because the vendor had waived it.

The contract on which this action was based was an entire contract. It was a contract for the sale of 5,021 cattle for $140,-588, and the $5,000 earnest money paid at the time the contract was made was paid on account of the entire purchase. The subsidiary provisions of the contract, that the price was $28 for each steer, and that there were to be five deliveries of the cattle, no more made as many contracts of this one as there were to be installments of cattle delivered than it made as many as there were cattle to be delivered. Norrington v. Wright, 115 U. S. 188, 203, 6 Sup. Ct. 12; Iron Co. v. Naylor, 9 App. Cas. 434, 439. Nor was the vendees' breach of this contract slight or in an immaterial part. It was substantial, and went to the very root of the contract. It consisted in their refusal to accept 282 cattle, and to pay $7,896 for them, at the time and place they agreed to accept and pay for them under the contract. These cattle had been gathered by the vendor from a range 40 miles square by the labor of many men for many days and driven near to the railroad station to be delivered to the vendees. Their refusal to take them imposed upon the vendor the necessity of gathering other cattle from this extended range in the same manner to carry out its contract in the face of the fact that the vendees had refused to accept nearly three hundred cattle that complied with its provisions. A plaintiff cannot maintain his action for the breach of a contract made with him by a defendant unless he can establish such performance on his part as will entitle him to demand performance of the defendant. A prior substantial breach of the contract on the plaintiff's part is ordinarily a conclusive answer to an action for a subsequent breach on the defendant's part. In their complaint the vendees recognized this principle, and alleged that they "have in all things kept and performed the said contract upon their part," but that the cattle company, on November 19, 1892, refused to perform on its part. The verdict does not rest, however, upon proof of this prior performance on the part of the vendees, but upon the facts that, before they charge any breach upon the cattle company, they had themselves failed to perform a substantial part of the contract, but that they then in good faith believed that they were not so failing. Nor was this exercise of good faith and belief by mistake, or without notice of the fact. It was a willful and determined exercise of faith. The vendor insisted, at the time, that these cattle weighed over 900 pounds each, weighed some of them in the presence of one of the vendees on some defective scales that indicated that its claim was well founded, and demanded that the vendees should accept them. All this may not have demonstrated the weight of the cattle, though it seems to have proved it to the satisfaction of the jury, but, although the judgment of the vendor's agent was liable to be at fault, and although the scales were defective, this was ample warning to the vendees to determine the weight of these cattle in some way correctly before they rejected them. They had, by the express terms of the contract, reserved to

themselves the exclusive privilege of rejecting cattle that did not in fact weigh 900 pounds, and by that very provision they had imposed upon themselves the duty of determining the fact, and of rejecting, at their peril, those whose weight exceeded that amount. The provision of the contract which presents this question is that the vendees may cut out "any objectionable steer that may not weigh 900 pounds." It was perfectly competent for these parties to this contract to have provided in it that the vendees might cut out and reject any steer that in their judgment weighed less than 900 pounds, or any steer that they in good faith believed weighed less than 900 pounds. This they did not do. They provided that the vendees might cut out those steers that in fact weighed less than 900 pounds each. There is a well-known and accurate standard and method for measuring the weight of cattle and most mercantile commodities, and contracting parties know when they make their contracts what the standard is, and what the method is, and that neither of them will probably change. But there is no accurate test, standard, or method by which the belief of vendees as to the weight of the articles they purchase can be measured, and no one can know in advance what such a belief may be. The belief of the defendants in error in this case was, according to the verdict of the jury, too far from the fact to authorize its substitution in this contract for the actual weight, for out of 980 cattle that weighed over 900 pounds each they believed that more than 28 per cent. of them weighed less. To substitute in this contract, for the actual weight, the judgment or belief in good faith of the vendees on that subject as the standard by which to determine what steers were heavy enough to comply with the terms of the contract, would be to make a new contract for these parties,—a contract they neither made nor intended to make, and one which the verdict shows would have been far more beneficial to the vendees than was the actual contract. It is not claimed that this can be done. But it is insisted that, although the good faith and belief of the vendees cannot be made the standard to determine the existence of the breach of this contract, yet they may be interposed to deprive that breach of some of its ordinary legal effects. But that as effectually makes a new contract for the parties as to substitute the vendees' belief as to the weight for the actual weight. The established rights and remedies for the breach of an agreement are as effectually contracted for as the performance of the acts stipulated. One of the rights of the vendor under this contract was to refuse to perform subsequent acts stipulated after the vendees had refused to perform a substantial part of the contract on their part. This right is given by the law for his protection to the party to a contract against whom the first breach has been committed. No sound reason occurs to us why its existence should be made dependent on the good faith or belief of him who first breaks the contract. On the other hand, there are cogent reasons to the contrary.

First. It is the breach itself, and not the good faith or belief of the party who commits it, that causes and measures the damage of the injured party. The injury to the vendor in the case before us

was not less because the vendees broke the contract in good faith, in the belief that they were not breaking it. Nor did the fact that they broke it in good faith, in the belief that they were complying with it, raise any presumption that they would not continue to do so. On the other hand, this fact presented the guaranty of word and of act that they would continue to break it.

Second. The rights and remedies of parties for breaches of civil contracts ought not to depend on the good faith and belief of those who violate them, because these are so difficult to ascertain. The proof of the existence or absence of such good faith and belief is peculiarly within the knowledge and control of the violators themselves. Frequently they alone know what they believe, and whether or not they are acting in good faith. It would always be difficult, and often impossible, to establish their bad faith or their belief that they were violating their contracts, without their testimony, and generally impossible to do so with it. The rights and remedies of parties for the breach of civil contracts ought not to be so placed at the mercy of those who break them. It would be intolerable that parties to continuing contracts should be compelled to perform them on their part until they could prove that the other contracting parties, who were constantly breaking them, were doing so in bad faith, and in the belief that they had no right to do so.

Our conclusion is that the right of a party to a continuing contract to refuse to make subsequent performance on his part, after the other contracting party has refused, upon full notice and demand, to perform a substantial part of the contract on his part, is not dependent on the good faith of the latter, nor on his belief that he is not violating the contract, but rests solely upon the fact whether or not he has violated or failed to perform a substantial part of the contract that the agreement required him to perform. Norrington v. Wright, 115 U. S. 188, 204, 205, 6 Sup. Ct. 12; Filley v. Pope, 115 U. S. 213, 6 Sup. Ct. 19; Rolling-Mill v. Rhodes, 121 U. S. 255, 261, 264, 7 Sup. Ct. 882; Beck & Pauli Lithographing Co. v. Colorado Milling & Elevator Co., 3 C. C. A. 248, 52 Fed. 700, 703, 10 U. S. App. 465, 470; Philip Mills v. Slater, 12 R. I. 82; Smith v. Lewis, 40 Ind. 98; Hoare v. Rennie, 5 Hurl. & N. 19; Pope v. Porter, 102 N. Y. 366, 371, 7 N. E. 304; Dwinel v. Howard, 30 Me. 258; Robson v. Bohn, 27 Minn. 333, 344, 7 N. W.357; Reybold v. Voorhees, 30 Pa. St. 116, 121; Stephenson v. Cady, 117 Mass. 6, 9; Branch v. Palmer, 65 Ga. 210; Fletcher v. Cole, 23 Vt. 114, 119.

In Norrington v. Wright, supra, most of the authorities cited by counsel for the defendants in error in this case in support of their contention that the failure of the vendees to accept a part of one installment of the cattle would not authorize the vendor to refuse to make the subsequent deliveries, are carefully reviewed, and disapproved or distinguished from cases like that before us. It would be idle to review them here again. In that case 5,000 tons of iron rails were sold to be shipped at the rate of about 1,000 tons per month. The vendor shipped 400 tons the first month and 885 tons the second, when the defendant refused to accept the rails, because

the shipments had been less than 1,000 tons per month. The vendor shipped the remainder of the rails, and sued for damages for the failure of the vendee to accept them. The supreme court held that he could not recover, and stated the rule to be:

"A statement descriptive of the subject-matter, or of some material incident, such as the time or place of shipment, is ordinarily to be regarded as a warranty, in the sense in which that term is used in insurance and maritime law; that is to say, a condition precedent, upon the failure or nonperformance of which the party aggrieved may repudiate the whole contract."

An attempt is made to distinguish this case from that at bar, because in the former the default occurred in the delivery of the first installment, and in the latter in the acceptance of the fourth installment. But it is a distinction without any substantial difference. The reason why the vendor could not recover in Norrington v. Wright was that he had committed the first breach of the contract, and that relieved the vendee from subsequent performance on his part. For the same reason the breach committed November 14, 1892, relieved the cattle company from any subsequent performance on its part. If a default on the first installment by one party relieves the other contracting party from the performance of all the stipulations of the contract, by so much the more will a default on a later installment relieve him from all subsequent performance. It is the first breach which he commits, and not the number of the particular installment to which it relates, that defeats the plaintiff, in these actions. Thus in Robson v. Bohn, supra, a contract was made May 19, 1873, for the sale of 425,000 feet of lumber, to be delivered at the rate of 20,000 feet per week from the date of the contract, and the defendant agreed to give his promissory note for $3,000 at that time, to pay $2,000 in cash August 1, 1873, and to pay the balance on the full delivery of the lumber. He gave his note for $3,000. The vendor delivered the lumber weekly until August 1, 1873. The vendee then failed to pay the $2,000 in cash, and the court held that the refusal of the vendee to pay the $2,000 excused the vendor from the delivery of any lumber subsequent to August 1st. To the same effect are Dwinel v. Howard and Reybold v. Voorhees, supra. The rule is general that he who commits the first substantial breach of a contract cannot maintain an action against the other contracting party for a subsequent failure to perform, and it rules this case.

Finally, it is contended that the cattle company waived the breach committed by the vendees, and that, even if there was error in the instruction we have been considering, it was error without prejudice, and the judgment should be affirmed. The claim of a waiver rests upon the fact that the cattle company received payment November 14, 1892, for the 698 cattle that the vendees accepted, and the claim that its agent then told the vendees to come at some later date for more cattle, and arrange to gather and deliver them. It is difficult to see how the cattle company waived any of its rights by insisting upon its acknowledged right to deliver and receive payment for the 698 cattle the vendees accepted, especially in view of the fact that these cattle were, according to the verdict,

worth several hundred dollars more than the contract price which the vendees paid for them, and they could have lost nothing by taking them. If the company had received payment for the 282 cattle that were rejected, there might have been some ground for the claim of waiver here. Nor is it easy to see how the statement that the vendees might come at some future day for more cattle, or any action the vendor took to gather and ship them, could work a waiver, when the cattle company notified the vendees, before they started to come for these cattle, that they need not do so, and that it would deliver no more cattle to them under this contract. There seems to be nothing in all this that could have induced the vendees to act or omit to act to their prejudice. We have grave doubts whether the evidence in this case is sufficient to sustain a verdict of a waiver of this breach by the cattle company if it were rendered. But it is unnecessary to determine that question here. That question, and the question whether or not the vendees committed the breach in good faith, in the belief that the rejected steers did not comply with the requirements of the contract, were submitted to the jury under instructions to the effect that, if they answered either in the affirmative, the vendees could recover, although they did commit the first breach of the contract. The verdict shows that the jury found that the vendees committed the first breach, and that they must have answered one of these two questions in the affirmative. But it does not show which one. Such a verdict cannot be upheld where there is more than one issue tried, and upon any one of them error is committed in the admission or rejection of evidence, or in the charge of the court, because it may be that the jury founded their verdict upon the very issue to which the erroneous ruling related, and that they were controlled in their finding by that ruling. Coal Co. v. Johnson, 6 C. C. A. 148, 56 Fed. 810; State of Maryland v. Baldwin, 112 U. S. 490, 492, 5 Sup. Ct. 278.

There are other questions discussed in the briefs, but, as the case must be retried, and these questions may not arise upon a second trial, it is unnecessary now to notice them. The judgment is accordingly reversed, with costs, and the cause remanded, with directions to grant a new trial.