## ST. LOUIS ELECTRIC LIGHT & POWER CO. v. EDISON GENERAL ELECTRIC CO.

(Circuit Court, E. D. Missouri, E. D. December 17, 1894.)

No. 3,651.

**1. AGENCY—ACCEPTING EMPLOYMENT WITH COMPETITOR OF PRINCIPAL.**

One G. made a contract with the S. Co. to act as its agent in the state of Missouri in the sale of electric motors manufactured by it. By said contract it was provided that the S. Co. should not sell any motors in that state, except through G.; that G. would prosecute the business diligently, and not engage in any other, except the furniture, business, in which he was then engaged, or be interested in the sale of any other motors. Shortly after making this contract, G. made another with the L. Co., which was engaged in the business of furnishing electric power, and thereby assigned to it the proceeds of his contract with the S. Co.; agreed that he would not sell the S. Co's. motors within a certain important district in the city of St. Louis, Mo., and that he would give his active personal management to the business of the L. Co., for which he was to receive a salary from that company. G. did not inform the S. Co. of the making of this contract. *Held,* that the making of such contract with the L. Co. was a breach of G.'s prior contract with the S. Co., and was also forbidden on grounds of public policy by his relation of agency for the S. Co., and it was immaterial that the S. Co. had in fact suffered no damage.

**2. PRACTICE—REFEREE'S FEES.**

Upon a motion to fix referee's fees, it appeared that the referee was engaged not more than seven weeks in hearing the evidence, which was voluminous, but was taken by a stenographer, who was paid by the parties, and in preparing his report. The amount in controversy was about $37,000. *Held,* that an allowance of $2,000 would be excessive, but $1,200 would be allowed.

This was an action by the St. Louis Electric Light & Power Company, assignee of one D. W. Guernsey, against the Edison General Electric Company to recover commissions alleged to be due under a contract. The case was sent to a referee and on the coming in of his report both parties filed exceptions.

This controversy grows out of a contract made on the 12th day of April, 1887, between the Sprague Electric Railway & Motor Company (hereinafter called the "Sprague Company"), a New York corporation, and one D. W. Guernsey, constituting said Guernsey agent for said company for the sale of electric equipments for railways and stationary motors, etc. The action is to recover commissions alleged to be due and owing to said Guernsey by the defendant company as the successor of said Sprague Company, under an alleged contract of novation. The case was referred by the court to Edward T. Farish, as referee, to make report thereon. On the coming in of his report

both parties filed exceptions thereto, and defendant more especially. These exceptions were heard by the court, both on oral arguments and printed briefs.

Boyle, Adams & McKeighan and Geo. W. Taussig, for plaintiff.
Seddon & Blair, for defendant.

PHILIPS, District Judge. A vital question lies at the threshold of this controversy, raised by the pleadings and evidence, which disposes conclusively of the plaintiff's action, if the defendant's contention in this particular obtains. By the provisions of the contract of agency between said Sprague Company and said Guernsey it is stipulated in the third paragraph that the Sprague Company should not, during said agency term, sell, furnish, rent, lease, or license, in the state of Missouri, any of its motor machinery apparatus, or permit any other person to make such sale, etc., or permit any other person to take the same into said territory. By the eighth paragraph it is provided that:

"Said party of the second part further agrees faithfully and diligently, at its own cost and expense, to prosecute said business of selling motors, machinery, and apparatus for said party of the first part in said territory, devoting such time thereto as he reasonably can, considering the other business in which he is now engaged (furniture business); and further agrees that, during the continuance of this contract, he will not engage in any other business, without the written consent of the party of the first part."

By the tenth and eleventh articles it further provided:

"(10) Said party of the second part further agrees that he will not be engaged or interested directly or indirectly in the introduction or sale of any other electrical motor, or system of electrical transmission of power. (11) It is further mutually agreed, by and between the said parties, that, in case of any breach of this contract by either party hereto, the aggrieved party may terminate the same by sixty (60) days' notice in writing given to the party committing the breach."

This contract was entered into April 12, 1887. Afterwards, on June, 1, 1888, Guernsey entered into a contract with the plaintiff company which recited, inter alia, that whereas, said Guernsey is the authorized agent of said Sprague Company, under a certain contract, "and whereas, the said party of the second part is desirous of securing to itself the benefits, profits, and advantages now enjoyed by the said party of the first part [Guernsey] under said contract and power of attorney, and also of securing the active services of the said party of the first part [Guernsey] in the management and prosecution of its business,"—"said party of the first part [Guernsey] agrees and hereby assigns, transfers, and sets over, unto said party of the second part [the plaintiff company], all the profits, benefits, and commissions coming and accruing to him under and by virtue of his said contract with said Sprague Company to said party of the second part for and during the term of five years from the date hereof. Said party of the first part also agrees that he will not himself sell, let, or dispose of motors commonly known as the 'Sprague Motor,' or become interested in any person, partnership, or corporation whose object is the sale or renting of such motors, for use to persons or corporations within the following described district of the city of St. Louis." (Then follows a description by metes and bounds of certain streets and avenues in the city of St. Louis.) "And that he will give such

active personal management to the conduct of the business of said St. Louis Electric Power Company as is necessary to the successful prosecution thereof. Said party of the second part agrees to pay to the said party of the first part the sum of $1,800 per annum, in equal monthly installments of $150 each, on the first day of each month hereafter and during the continuance of this contract, to wit, until June 1, 1893, and that it will defray traveling expenses of said party of the first part when engaged in the prosecution of the business of said party of the second part."

It does not admit of debate that, without more, this contract on the part of Guernsey was wholly incompatible with and antagonistic to his prior engagement with the Sprague Company. For the express contract of the first engagement was that, with the single specified exception of his private business as a furniture merchant, he was faithfully and diligently to give his time and services to the prosecution of the business interests of the Sprague Company, and that during the continuance of the contract he would not engage in any other business without the written consent of the Sprague Company; whereas, by his contract with the plaintiff company, he not only assigned and transferred to the plaintiff company all the profits, benefits, and commissions from the Sprague Company, but it boldly recites that the St. Louis Company, as his new liege lord, desired to secure, not only the benefit of his agency, but the active services of Guernsey in the management and prosecution of its business. Nor was this all, but he obligated himself to abandon to the St. Louis Company that part of the territory in the city of St. Louis which of right, under his contract with the Sprague Company, belonged to the latter company for the sale and placing of motors; and, as evidence conclusive that both he and the St. Louis Company understood and believed that the services to be rendered by Guernsey to the latter company were most valuable, he was to receive a salary of $1,800, in monthly installments, and his traveling expenses when engaged in the prosecution of the business of the St. Louis Company; "and that he will give such active personal management to the conduct of the business of said St. Louis Electric Power Company as is necessary to the successful prosecution thereof." Aside from the express terms of the contract between Guernsey and the Sprague Company, his relation of agency for the latter company absolutely forbade him, upon grounds of sound public policy, from entering into another agency contract with another company engaged in a similar business, binding him to activity in the prosecution of his new master's business, and consenting to abandon a part of the field which he had engaged to occupy for the first master. The plaintiff recognizes this inflexible rule of public policy and justice by relying upon certain matters by way of avoidance. It is claimed, first, that it was not intended by either of the parties to the latter contract to preclude Guernsey in selling the Sprague motors, etc., within the prescribed district, and claiming that the same was not in force, but that Guernsey continued to sell the same therein; and, second, that by reason of the plaintiff's engaging in said business it served to create a larger demand for said Sprague motors in the city of St. Louis,

and that property was billed and charged to said Guernsey, and that the plaintiff company was the only one in St. Louis that could run the Sprague motors in supplying power to commercial customers, and that Guernsey, during the life of said contract, sold in said district a large number of such motors; and, third, that the Sprague Company and defendant knew of said contract and services Guernsey was rendering the plaintiff without objecting thereto.

The reply is somewhat sui generis. It is rather an argument than a statement of facts constituting a good defense. The argument is that, notwithstanding the contract obligated Guernsey, without the written consent of the Sprague Company, to wholly abandon to the use of the St. Louis Company certain territory in an important business portion of the city of St. Louis, yet there was no actual breach of the contract of agency between Guernsey and the Sprague Company, because the St. Louis Company did not in fact carry into effect that part of the agreement. It does not plead, nor is it claimed, that this provision of the contract between Guernsey and the plaintiff was abrogated, but simply because there was a nonuser it constituted no infraction of Guernsey's contract of agency with the Sprague Company. I do not so understand the law. The law will not tolerate contracts and transactions which place one under obligations to do wrong, or which subjects him to wrong influences. On grounds of public policy, the law denounces such conduct, because of its direct tendency to induce fraud upon the rights of others. "One employed by another to transact business for him has no right to enter into a contract with a third person which would place it in his power to wrong his principal in the transaction of the business of the latter, and which would tempt a bad man to act in bad faith towards his employer. The interests of the defendant's employers and those of the plaintiff's, as buyers and sellers, were antagonistic, and defendant could not serve two masters in a matter in which there was such a conflict of interests." Pegram v. Railroad Co., 84 N. C. 696; Atlee v. Fink, 75 Mo. 103, 104. And, when we turn to all the facts disclosed by the evidence in the record, we find that they do not justify this attempted avoidance. It is true that Guernsey may have sold for the Sprague Company motors, etc., which may have been used in the prescribed district, but he was acting in fact in the interest of the St. Louis Company, in which he got a discount, on the plea that it was a purchase for himself; so that he occupied the attitude of an agent for the Sprague Company, for which he received the benefit, and turned the purchase over to the St. Louis Company, which presumably obtained its profit, and which profit went to swell the exchequer of Guernsey as a stockholder in the St. Louis Company. Guernsey did not thereafter sell a single motor directly to any purchaser within the restricted district, but he sold them for the St. Louis Company. It is no justification to say that, by reason of the arrangement made by Guernsey under his contract with the St. Louis Company, the interests of the Sprague Company may have been promoted as the sum of the final result. The law will not permit an agent thus violating the express terms of his contract of agency to say, if it ultimately turns out that his employer was not in fact dam-

aged, there was no breach of his contract, as the authorities hereinafter declare.

The other matter relied upon by the plaintiff in this contention is of the nature of a waiver on the part of the Sprague Company and the defendant company. It is elementary law that, to constitute a waiver, the party upon whom it operates must have full knowledge of all the essential or material facts of the acts and conduct of the other party, and, with such knowledge, consents to proceed notwithstanding; and the party relying upon such waiver assumes the burden of proof as to the knowledge of the party making the waiver. Bigelow, Estop. tit. "Waiver," p. 660; Dyas v. Hanson, 14 Mo. App. 364. An examination of the evidence wholly fails to show that the Sprague Company, much less the defendant company, had any knowledge whatever of the facts either that Guernsey had made the character of assignment recited in his contract with the St. Louis Company, or that he had obligated himself therein to retire from the designated territory in St. Louis, or that he was receiving from the St. Louis Company the sum of $1,800 per year for his services, with expenses added for travel in prosecuting the business of the latter company. When pressed on this matter as to what knowledge the Sprague Company had, Guernsey simply testified that his letter heads, used in correspondence with the Sprague Company, showed that he was president of the St. Louis Company, and that the company knew he was largely interested in the St. Louis Company. He said:

"I don't know that he knew how much interest I had in it, but my letter head showed that I was president of the company. We didn't talk about that that I know of, particularly; but he knew that I was president of the company, and knew that I was largely interested, and it was more at his suggestion than that of anybody else that I was to install a hundred horse power before I was to receive the agency on the formation of the company."

All the persons representing the Sprague Company and the defendant company testified that they did not understand Guernsey's relation to the St. Louis Company, the extent and particulars thereof. The contract expressly providing that he should not engage in any other business without giving written notice to the Sprague Company, it became his imperative duty, in good faith, before entering into such apparently antagonistic relations with another company, to notify his principal thereof and obtain its consent thereto. The fact that he not only failed to do this, but did not at any time inform his first principal of the whole provisions of his contract, is most persuasive evidence that it was a studied concealment. It is incredible to believe that had the Sprague Company known that its agent had bound himself not to solicit business in an important business portion of the city of St. Louis, and that he was actually receiving from another company, in whose favor he abdicated as to such territory, his salary for his active services in prosecuting the business of the new company, it would not either have refused its assent, or demanded that he turn over the pay he was receiving for services under his contract, which of right belonged to the Sprague Company; and, as to the defendant company, his concealment of even the existence of his contract with the St. Louis Company from Mr. Herrick, the representative of the defendant company, in March, 1890, when he was

advised by Mr. Herrick that it was the policy and purpose of the defendant company to get rid of the agents of the old Sprague Company, and to do the business directly itself without the intervention of such agency, is most indefensible. When thus notified by Mr. Herrick, he planted himself squarely upon the provision of the contract with the Sprague Company, which entitled him to a year's notice to quit; whereas, had he disclosed the facts of his contract with the St. Louis Company, there can be no question but that the defendant company would have exercised the right secured by the other provision of the contract, which authorized the termination of the agency on sixty days' notice; and, in view of the fact that the claim for commissions is based largely on transactions occurring after the defendant's alleged succession, gives especial force to the last criticism.

The report of the referee in respect of this issue is argumentative and apologetic in extenuation of Guernsey's bad faith. In respect of the assignment of Guernsey's benefits and compensations under the Sprague Company contract, the referee says it was not unlawful, nor a breach of his agency contract. This is a mere conclusion of law, without any reference to the recited fact in the contract that the inducement to the assignment was that the St. Louis company desired to secure both the benefit of Guernsey's agency and his active services in the management and promotion of its business. This was an express division of Guernsey's services between the two companies, and a dividing of his allegiance which he had contracted theretofore to give wholly to the Sprague Company. And it ought to follow that as by the express terms of Guernsey's contract with the Sprague Company he was to give his undivided services to the Sprague Company, with the single specified exception as to the furniture business, his earnings from the St. Louis Company should of right belong to his first master.

The referee also finds that it ought to be a sufficient answer to the concealment by Guernsey of the contract that he was receiving $1,800 from the St. Louis Company; that his furniture business had collapsed; and that the quantum of time given to his new master was, perhaps, not greater than that which would otherwise have been given to his furniture establishment. As the only reservation of time on the part of Guernsey made in the contract with the Sprague Company from attention to its business was the specified furniture business, when that ceased the law is that the Sprague Company became entitled to his whole time and services. He could not substitute any other service without notice to and consent by his principal. Neither does the referee find the fact to be that either the Sprague Company or defendant had knowledge of the fact, even, of the existence of the written contract, or of the assignment of its benefits and commissions under the contract with the Sprague Company, or of the exclusion of Guernsey from the prescribed territory in St. Louis for the sale of motors, or that he was receiving from the St. Louis Company a salary for his services rendered to it. Nor does the referee make report of finding of the real facts respecting the manner in which the goods of the Sprague Company were admitted, through the St. Louis Company, into said restricted terri-

tory.    He merely undertakes to show how the Sprague Company was not in fact, as the result of the transaction, injured by Guernsey's contract with and services rendered to the St. Louis Company.

The referee seems to have ignored the just rule of law laid down repeatedly by the courts, that "where the double employment exists, and is not known, no recovery can be had against the party kept in ignorance, and the  result is not made to turn on the presence or absence of designed duplicity and fraud, but is a consequence of established policy.    It matters not that there was no fraud meditated and no injury done; the rule is not intended to be remedial of actual wrong, but preventive of the possibility of it."    "The danger of temptation from the facility and advantage for doing wrong, which a particular situation affords, does, out of mere necessity, work a disqualification."    Scribner v. Collar, 40 Mich. 375; Everhart v. Searle, 71 Pa. St. 256; Rice v. Wood, 113 Mass. 133; De Steiger v. Hollington, 17 Mo. App. 382.    The referee draws the inference of knowledge as the predicate for a waiver from the mere fact that the Sprague Company knew that Guernsey was president of the St. Louis Company and interested therein, and the like. The conclusion of law made by him is a non sequitur.    It is an indispensable rule of pleading on a breach of contract that the plaintiff should aver that he himself has fully kept and performed the contract on his part.    This the plaintiff's counsel recognized in his petition, which makes this necessary averment.    As said recently by the federal court of appeals in this district through Sanborn, J., in Cattle Co. v. Martindale, 11 C. C. A. 33, 63 Fed. 84:

"The rule is general that he who commits the first substantial breach of a contract cannot maintain an action against the other contracting party for a subsequent failure to perform, and it rules this case."

Again, the learned judge says:

"The reason why the vendor could not recover was that he had committed the first breach of the contract, and that released the vendee from subsequent performance on his part. * * * If a default on the first installment by one party relieves the other contracting party from the performance of all the stipulations of the contract, by so much the more will a default on a later installment relieve one from all subsequent performance. It is the first breach which he commits, and not the number of the particular installments to which it relates, that defeats the plaintiff in this action."

It is not questioned that had Guernsey or the plaintiff advised in form or effect the Sprague Company and the defendant of the substantive provisions of his contract with the St. Louis Company, and, with a knowledge thereof, the Sprague Company and its alleged successor had continued thereafter to recognize Guernsey's agency in their dealings with him, they would have been estopped from denying their liability to him under the contract of agency.    But it does seem to me that to permit the plaintiff to recover in this case would be to render it of no avail to a party to put in his contract an express provision requiring notice, in writing or otherwise, that his agent was taking active service under another principal, and that the courts, instead of respecting and enforcing explicit contracts between parties, may disregard and nullify them.    In view of the conclusion thus reached, it is unnecessary to discuss other exceptions made to the referee's report, as it must result that the plaintiff cannot recover.

The referee asks for an allowance of $2,000 in compensation for his services herein. It appears that prior to the filing of his report, upon request made by him, each of the parties hereto advanced him the sum of $500, to be accounted for in the final adjustment. There does not appear to be any specific provision in the federal statute for a referee in law actions. On the contrary, it has been expressly held that without the consent of both parties the United States circuit court cannot compel the parties to submit to a referee in an action at law, for the obvious reason that the law entitles the party to a trial by jury. U. S. v. Rathbone, 2 Paine, 578, Fed. Cas. No. 16,121; Machine Co. v. Edwards, 15 Blatchf. 402, Fed. Cas. No. 6,784. With the consent of both parties, such reference may be made. Canal Co. v. Swann, 5 How. 83–89; Heckers v. Fowler, 2 Wall. 123. How far the mode of procedure under such reference may or shall conform to the provisions of the local state statute concerning references, it is not necessary here to decide. It is apparent, from the preliminary action taken by the referee, in qualifying, and in his subsequent proceedings, he evidently conceived that the state Code applied. The state statute (section 2158) provides, in the absence of any agreement special, the compensation of the referee shall be fixed by the court, "not exceeding ten dollars per day." Neither of the parties insist that this limitation of compensation shall be applied in this instance. But it is objected that the amount asked for by the referee is unreasonable, and so the court thinks. From the best information furnished, it does not appear that the referee was occupied over seven weeks in hearing the evidence and preparing his report. The evidence, it is true, is quite voluminous; but the evidence was taken by a stenographer, and transcribed by him, for which I assume the parties paid. The report does not indicate that it could not have been prepared within five days or a week. It is true the matters in controversy were large, involving in actual dispute about $37,000, but compensation ought always to be regulated by the quantum of actual work, rather than by the speculative disputes of the parties or the sums involved to the disputants. Courts are always plagued by bad precedents; so that large and fanciful allowances to masters in chancery and referees are hurtful in two directions: They beget struggles for such appointments because of their undue rewards; and they put such burdens on the litigants, in the matter of costs to the unsuccessful litigant, that attorneys, with due regard to the interest of their clients, will decline to consent to such references, thereby lessening the opportunities of the courts to relieve themselves of almost insupportable burdens by calling to their aid the assistance of masters and referees. In this case I should have deemed $1,000 as a sufficient remuneration to the referee; but, out of deference to his earnest contention, it is ordered that his compensation be taxed at $1,200. It results that the exceptions to the report of the referee on the part of the defendant must be sustained, for the reason that the plaintiff is not entitled to recover, and the exceptions on the part of the plaintiff are overruled. Judgment for the defendant that the plaintiff take nothing by its action.