### ANKENY et al. v. RICHARDSON et al.

(Circuit Court of Appeals, Eighth Circuit. May 8, 1911.)

No. 3,097.

*(Syllabus by the Court.)*

1. LANDLORD AND TENANT (§ 92*)—OPTION TO PURCHASE AVAILABLE TO HEIRS.

The lessor in a lease with the privilege of four yearly renewals covenanted that, in case there was no default by the lessee, he might have the option to purchase at any time before January 1st of each year of the renewals for $8,960, one-fourth cash and balance secured by purchase-money mortgage, and that the covenants of the lease should extend to and be binding upon the heirs, executors, and administrators of the parties thereto.

*Held*, the covenant to grant the option extended to and inured to the benefit of the heirs of the lessee, and they could exercise it.

[Ed. Note.—For other cases, see Landlord and Tenant, Cent. Dig. §§ 290–294; Dec. Dig. § 92.*]

2. LANDLORD AND TENANT (§ 92*)—LEASE—CONSTRUCTION—OPTION TO PURCHASE—DEFAULT.

The lease provided that it might be renewed by paying on January 1st in each year $627.20, "and agreeing to pay the taxes and assessments of each year when due, and penalty in case of default." The lessee paid the $627.20, and remained in the possession and use of the premises under the renewal thus wrought.

*Held*, he thereby agreed to pay the taxes and assessments of that year, and the subsequent failure of his administrator and heirs, through mistake and without notice or demand, to pay the taxes and assessments, did not constitute such a default in the terms of the lease as prevented them from lawfully exercising the option.

[Ed. Note.—For other cases, see Landlord and Tenant, Dec. Dig. § 92.*]

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

**3.** GUARDIAN AND WARD (§§ 45, 53*)—AUTHORITY TO PURCHASE AND MORT-GAGE REAL ESTATE.

In Nebraska a guardian may, by authority of the county court, lawfully exercise an option to purchase land covenanted to his wards, and may pay for it in cash, or partly in cash and partly in a note and mortgage of the guardian, as such, secured upon the land purchased.

[Ed. Note.—For other cases, see Guardian and Ward, Cent. Dig. §§ 202½, 232–241; Dec. Dig. §§ 45, 53.*]

**4.** GUARDIAN AND WARD (§ 38*)—PURCHASE OF LAND—PERFORMANCE BY PURCHASER—TENDER BY GUARDIAN.

Where minor heirs have the option to purchase real estate for one-fourth cash and a purchase-money mortgage on the premises for the balance, an offer of the cash and of the note and mortgage of their guardian as such, authorized by the county court, is a sufficient tender to exercise the option.

[Ed. Note.—For other cases, see Guardian and Ward, Dec. Dig. § 38.*]

Appeal from the Circuit Court of the United States for the District of Nebraska.

Bill by Henry T. Ankeny, as guardian, etc., and Lillie B. Ankeny, against Leslie T. Richardson and others. Decree for defendants, and complainants appeal. Reversed and remanded.

This is a suit for the specific performance of an alleged contract to convey a half section of land in the state of Nebraska, which was dismissed by the Circuit Court on the ground that the heirs of the lessee, who had an option to purchase the property from his lessor, which he did not exercise during his lifetime, could not exercise this option after his death. On April 1, 1901, Eri Richardson made a written contract with H. A. Ankeny, whereby he leased the half section to him for 11 months from that date for $627.20 and the payment of the taxes and assessments thereon for the year 1901, and, as the contract reads, "covenanted and agreed" (1) that in case there was no default in the terms of the lease Ankeny should have the privilege of four successive yearly renewals by paying on January 1st in each year $627.20 rental, "and agreeing to pay the taxes and assessments of each year when due, and penalty in case of default," and (2) that Ankeny should have the option to purchase the land at any time before January 1st in each year during the term of the lease and during the term of any renewal thereof for $8,960, one-fourth cash and three-fourths "secured by a mortgage on above premises, with interest at 7 per cent. per annum, payable annually, and payable in five years thereafter." The contract was signed by both parties, and it contained this further provision: "The covenants herein shall extend to and be binding upon the heirs, executors, and administrators of the parties to this lease."

Ankeny took possession of the land under the contract in 1901, built a house on it which cost him $1,200, made other improvements that cost him $600, paid the rent to March 1, 1904, and the taxes for the year 1901, and died on April 13, 1903, leaving surviving him his widow and six children, who are minors, and his sole heirs at law, and who, by their guardian, are joint complainants with the widow in this suit. The administrator of the estate of the deceased paid the taxes on the land for the year 1902 in May, 1903, and Henry T. Ankeny, the guardian of the minor heirs, paid the taxes thereon for the years 1904, 1905, and 1906. The taxes for the year 1903 were not paid through an oversight, and in November, 1904, the land was sold for these taxes, and was subsequently redeemed from that sale by the defendants, who have succeeded to all the rights of the lessor, Richardson, who died in 1903.

The administrator of the deceased lessee tendered to the defendants on January 1, 1904, the rent for the succeeding year commencing March 1, 1904,

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

and the guardian of his minor heirs on January 1, 1905, tendered to them the rent for the succeeding year; but they refused to accept either offer. In September, 1905, the county court of Cedar county, Neb., which had jurisdiction of the minor heirs of the lessee and of their property, by decree authorized their guardian to exercise the option granted by the contract to purchase the land, and to pay for this land out of the estates of the minors $8,960 in cash, or to pay one-fourth thereof in cash and the remaining three-fourths by his note and mortgage as guardian, payable in five years, with 7 per cent. annual interest, secured upon the premises. On October 31, 1905, pursuant to that decree, the guardian tendered to the defendants $8,960 in cash and demanded a deed of the land from them; but they refused to accept the tender or to make the deed. On the same day he tendered to them one-fourth of the purchase price in cash, and for the other three-fourths his promissory note and mortgage as guardian, payable in five years, with annual interest at 7 per cent., secured upon the half section of land, and demanded a deed thereof; but they refused to accept the offer or to make the conveyance. The defendant who, for himslf and his codefendants, declined these offers to purchase, at the time gave as the reason for their refusal to accept them that since the death of the original lessee his heirs were not entitled to exercise the option to purchase granted by the contract, and he gave no other reason for their refusal.

The land has been in the exclusive possession of the original lessee, the administrator of his estate, or the complainants, in whose possession it now is, ever since the spring of 1901, when the lessee took possession of it under the contract. At that time it was worth about $9,000, on January 1, 1904, when the defendants first refused to accept rent, it was worth $15,000, and its value has since risen to $21,000.

H. C. Brome (J. C. Robinson, on the brief), for appellants.

Frank H. Gaines (E. G. McGilton and Sidney W. Smith, on the brief), for appellees.

Before SANBORN and VAN DEVANTER, Circuit Judges.

SANBORN, Circuit Judge (after stating the facts as above). When the lessee died in 1903, he had the possession of the land in question and the right to hold that possession, and to add to it the indefeasible title, by paying at any time during that year, or any other year for which the lease was renewed, $8,960, one-fourth in cash and three-fourths in five years, secured by a purchase-money mortgage upon the premises. In effect he was in the position of a mortgagor in possession after foreclosure and during the period allowed for redemption. The property was worth about $15,000 when he died. He had it, and he had the right to keep it by paying $8,960; but he was not under any obligation to take the land or to pay the money. Now, why have not his widow and his heirs the same right? Counsel for the defendants answer: (a) Because the option to purchase was personal to the lessee, for whose credit and financial responsibility, during the five years the payment of three-fourths of the purchase price was deferred, the lessor contracted, so that the option died with him, and his heirs could not exercise it; (b) because the taxes of 1903 were not paid, and their payment was a condition precedent to the exercise of the option; (c) because, if the option survived, it was personal property, it passed through Ankeny's administrator to the widow and heirs jointly and the tender of the guardian alone was insufficient to constitute an acceptance of the offer; and (d) because a guardian cannot purchase land for his wards, his note was not a permissible sub-

stitute for the note of the original lessee, and the tender was for that reason insufficient.

[1] 1. The contract on which the rights of the parties to this controversy depend is one and indivisible. It is not one contract to permit possession and use of the premises for rent, and another contract to give an option to buy them. It is a single contract to grant the right to purchase and the possession and use of the land for certain times in consideration of specific payments. When the lessor paid his first $627.20, he bought the right to purchase the land for $8,960 at any time prior to January 1, 1902, the right to its possession and use until March 1, 1902, and the right to four yearly renewals of these rights. When he paid the third $627.20, he bought the right to purchase the land for $8,960 at any time before January 1, 1904, and the right to the use and possession thereof until March 1, 1904. He died possessed of these rights. It is not material whether these rights constituted personalty or realty: (1) Because his debts have been paid, his estate has been settled, and every interest in and right to this property which he held has vested in the complainants; and (2) because the terms and the meaning of the contract itself control the decision of this case. That contract demonstrates the facts that the parties to it were making an agreement for a term of five years; that they were men of experience, familiar with business affairs, and mindful of the uncertainty of life; that the thought was in their minds that they might not live through the term of five years; and that, if they did not, they would have administrators and heirs, and they provided for this contingency by this stipulation of their contract:

"The covenants herein shall extend to and be binding upon the heirs, executors, and administrators of the parties to this lease."

Now, this agreement contains a covenant of the lessor that the lessee shall have the option to purchase by paying one-fourth of the purchase price in cash, "and balance of purchase money secured by a mortgage on above premises, with interest at 7 per cent. per annum payable annually, and payable in five years." It contains no requirement that this mortgage or the note it was to be made to secure should be that of the original lessee, and not that of his legal representatives in case of his death, or that it should be payable to or inure to the benefit of the original lessor, and not to his legal representatives in case of his death. On the other hand, agreements are found in it that neither the lessee nor his legal representatives shall assign the contract without the consent of the lessor, and that the lessor or his legal representatives may take possession upon default of the lessee at the election of the lessor. The lessor died in 1903. Suppose the lessee had defaulted. Would the administrator and heirs of the lessor have been deprived of their right to re-enter for the default because the lessor had not elected to do so before he died? If not, why should the heirs of the lessee be deprived of their option to purchase because the lessee did not exercise that option before he died?

Counsel argue that the stipulation that the covenants of the contract "shall extend to and be binding upon the heirs, executors, and administrators of the parties to this lease" means that the covenants shall extend to the heirs, executors, and administrators of the parties bound

by the respective covenants only, and that as the lessee was not bound by the lessor's covenant to give him an option to buy, and as the lessee never agreed to purchase, that covenant did not extend to his heirs. This interpretation, however, is too narrow and subtle. Standing as far as possible in the place of the parties to this agreement at the time they made it, reading the entire contract, and giving effect to all its terms, the conclusion is that these parties intended to and did agree that each covenant therein should extend to and inure to the benefit of the heirs, executors, and administrators of the covenantee, and should bind the heirs, executors, and administrators of the covenantor therein; that the covenant of the lessor that the lessee should have the option to purchase bound the heirs, executors, and administrators of the lessor, and extended to and inured to the benefit of the heirs of the lessee; and that the latter had the same right to exercise the option and to buy the property that the lessee would have had, if he had lived to the end of the term of five years. The option to purchase was available to the heirs of the lessee.

[2] 2. Was the failure of the administrator and the heirs to pay the taxes of 1903 fatal to the exercise of the option and to this suit? The contract was that the lessee, or his heirs and administrator, should have a yearly renewal of the lease and of the option to purchase by paying promptly in advance on the 1st day of January of each year $627.20, "and agreeing to pay the taxes and assessments of each year when due, and penalty in case of default, and to comply with the other and further terms and conditions herein." The lessee promptly paid on January 1, 1903, $627.20 for the renewal of the lease and option from March 1, 1903, to March 1, 1904, and he, until he died in April, 1903, and his administrator thereafter until March 1, 1904, occupied and used the premises under the contract. Although there was no further specific agreement on the part of the lessee to pay the taxes and assessments of 1903, there is no doubt that, by paying the yearly rental and continuing to hold the possession and use of the premises under the contract, he made a legal and binding agreement to pay those taxes and assessments and obtained a renewal of the contract for that year. No claim to the contrary is made in brief or argument. But the option covenant reads:

"That in case no default shall be made in the terms of this lease on the part of the party of the second part (the lessee), he may have the option to purchase."

And counsel argue that because neither the lessee, nor his administrator, nor the heirs, paid the taxes of 1903, there was a default on their part, so that a condition precedent to the exercise of the option was not fulfilled. The condition precedent here, however, was not the payment of the taxes, but the agreement to pay them, and the penalty in case of default. The lessee made the agreement, and thereby complied with the condition of the contract. No demand that he, his administrator, or his heirs perform this agreement and pay the taxes was ever made, and neither he, nor his administrator, nor his heirs, ever made default in the terms of the lease, although the fact was that through the mistake of the administrator they failed to pay these taxes prior to the commencement of this suit. As soon as they discovered

that these taxes had been overlooked, however, they amended their bill, and offered, and still offer, to pay them.

There is another reason why the failure to pay these taxes was not fatal to the claim of the complainants. The defendants refused to accept the $627.20 tendered them on January 1, 1904, and then and thereby repudiated the contract before the taxes of 1903 became delinquent, and before the agreement of the lessee to pay them matured, and from that time the issue between those parties has been, and still is, whether or not the heirs of the lessee had the right to exercise the option covenanted by the contract. The refusal of the defendants to accept that rent for a renewal of the contract was the first breach of the agreement, and he who commits the first breach of a contract cannot successfully charge the other contracting party with an actionable default for a subsequent failure on his part to perform his promises. Norrington v. Wright, 115 U. S. 188, 204, 205, 6 Sup. Ct. 12, 29 L. Ed. 366; Cresswell R. & C. Co. v. Martindale, 11 C. C. A. 33, 38, 63 Fed. 84, 89; National Surety Co. v. Long, 60 C. C. A. 623, 628, 125 Fed. 887, 892.

3. The heirs of the lessee tendered the note of the guardian and his mortgage upon the property for three-fourths of the purchase price and cash for one-fourth thereof, and also tendered the entire purchase price in cash. The objection that this tender was insufficient, because the widow did not sign the note, is untenable, because she signed the mortgage, and by the terms thereof released all her interest in the premises, so that the guardian's note and mortgage gave the security stipulated in the contract. This objection was not made at the time of the tender. The sole reason then given by the defendant for the rejection of the offer was the unsound one that since the death of the original lessee his heirs were not entitled to exercise the option. In view of the fact that the widow thus signed the mortgage and released all her interest in the premises, it is not material, as has been before remarked, whether the right to exercise the option was real or personal property, because all the rights and interest therein and thereunder have passed to the widow and heirs of the lessee, and they are all parties to this suit.

[3] 4. The county court had authority to empower, and it did empower, the guardian of these minor heirs to exercise the option, and to purchase and pay for the land thereunder, either in cash or by paying one-fourth in cash and giving a mortgage for the balance. 2 Kent's Comm. 230; McCoy v. Lane, 66 Neb. 847, 92 N. W. 1010; Laws of Nebraska 1905. c. 62, § 3.

[4] The tender by the guardian of the purchase price in cash, and then again of one-fourth of the price in cash and three-fourths in his note and mortgage as guardian, secured on the property, was sufficient to exercise the option, because the heirs had the right to purchase under the contract, and hence to purchase with the only note and security which they commanded.

The decree below must accordingly be reversed, and the case must be remanded to the court below, with instructions to render a decree in favor of the complainants.

And it is so ordered.