1806.
December.

Lynch
vs
Colegate

LYNCH vs. COLEGATE.

*Whenever, on motion to dissolve an injunction, it appears from the answer that the complainant was entitled to an injunction at the time of obtaining it, the same shall continue until final hearing, or further order, unless the defendant admits everything alleged in the bill on account of which the injunction was obtained. When that admission is made, and the injunction has been to stay execution at law, the injunction may be dissolved, with a proviso that not more be levied than remains due after allowing every thing claimed by the complainant. But when a proper ground for the injunction is admitted by the answer, and there still remains a dispute between the parties, the injunction is invariably continued until final hearing, or further order.*

*A purchased land from B. and, in the bond given for the purchase money, C becomes bound as surety, B having impressed him with an idea that the money might be paid from the sale of wood on the land, to prevent the sale of which B afterwards obtained an injunction. On a bill brought by the surety, it was decreed that he should be relieved from his suretyship.*

*An appeal or writ of error or standing under rule argument, does not abate by the death of either party, (note.)*

APPEAL from a decree of the court of chancery, perpetuating an *injunction.* The bill of complaint of *Colegate,* the present appellee, filed the 10th of November 1800, stated, that one *Kingsmore,* in 1797, purchased of *Lynch,* the appellant, a tract of land for a large sum of money, to be paid by instalments; that the first instalment amounted to £1200, and was intended, in a great measure, to be paid out of the first crop on the land, and by the sale of wood; that *Lynch* declared that the wood on the land would nearly pay for the land, and it was understood and agreed, that the wood should be cut and carried to market for the purpose of paying the instalments, (in aid of the crop,) as the same should become due; that in consideration of the express agreement that *Kingsmore* should have leave to cut and sell the wood in order to meet the instalments, the complainant became bound in a bond with him to *Lynch,* conditioned for the payment of the first instalment of £1200, with interest; that the complainant would not have become security for the instalment, but under the express proviso and engagement that *Kingsmore* was to have leave to pay it off by wood; and that the inducement of his buying the land was the representation and statement made by *Lynch,* that the wood on the premises, so convenient to market, would nearly pay for the land. That *Kingsmore* paid £300 on account of the instalment; and other sums of money, and articles or accounts were paid, which *Lynch* has, or means to apply to other instalments, although they were not due at the time. That *Kingsmore* cut down 300 cords of wood to enable him to pay up the balance of his first instalment, and to exonerate the complainant, his surety; and that *Lynch* fraudulently meditated an act of oppression which he carried into effect, by bringing suits, immediately after the first instalment became due, on the bond against *Kingsmore* and the complainant, and filing a bill in chancery, and obtaining an injunction, which prevented *Kingsmore* from getting the wood to market, and to cut other wood, &c. That judgment has been obtained against the complainant by *Lynch,* who has not credited the £300, nor with such other sums of money, wood or articles, which he may have received. The bill calls upon *Lynch* to answer, &c. and to declare,

what sums of money, &c. he hath received. *Prayer* for relief, and for a *subpena*, and an *injunction* against executions issuing on the judgment, &c. *Subpena* and *injunction* accordingly issued.

The *answer* of *Lynch*, which was filed on the 25*th* of *November* 1800, denies that he ever declared or agreed that the wood on the land should be cut and carried to market for the purpose of paying the instalments, (in aid of the crop,) as the same should become due or otherwise; nor was any agreement ever made by him with *Kingsmore*, by which the same was to be paid by wood, or that wood should be cut and sold from the land for that purpose; and therefore no inducement from such agreement could have been the motive of the complainant for becoming surety for *Kingsmore*, no such agreement having ever been made. He admits that he received £300 9 4, at sundry times, as appears by one of the accounts exhibited, which are all the payments whatsoever made by *Kingsmore* on account of the bond in which the complainant is surety. He never denied the payments, nor claimed to appropriate the same to any other instalment, but hath been, and now is, ready and willing to credit the same on the bond for £1200, in which the complainant is surety. That the credits in the other account exhibited were paid and received, and applied to the discharge of another debt due to the defendant for the articles mentioned in the debit side of that account, sold and delivered, &c. and had no relation to the land purchased. That *Kingsmore* and the complainant, having failed to comply with the condition of their bond, the defendant caused suits to be instituted for the recovery of the balance due thereon, and hath obtained judgments at law. That *Kingsmore* having proceeded, against the consent of the defendant, to the cutting and selling timber, and other trees, growing on the land, and done other acts greatly endamaging the estate, and injuring the defendant, he applied for and obtained an injunction, &c. He denies all fraud, &c.

HANSON, Chancellor, (November 25th, 1800.) The defendant having put in his answer, and entered on the docket notice of motion to dissolve the injunction in this cause issued, it is at his instance ordered, that the motion stand for hearing at next term; provided a copy of this or-

der be served on the complainant before the end of the present month.

. A service of the above order was proved to have been made, on the 27th of November, 1800.

HANSON, Chancellor, (January 6th, 1801.) The motion to dissolve, &c. being submitted, &c. The Chancellor must, on this occasion, repeat a rule, which he has always adhered to, and which he conceived was well known— "Whenever, on motion to dissolve, it appears from the answer that the complainant was entitled to an injunction at the time of obtaining it, the same shall continue until final hearing, or further order, unless the defendant admits every thing alleged in the bill, on account of which the injunction was obtained." When that admission is made, and the injunction has been to stay execution at law, the injunction may be dissolved with a proviso, that not more be levied than remains due after allowing every thing claimed by the complainant; but when a proper ground for the injunction is admitted by the answer, and there still remains a dispute between the parties, the injunction is invariably continued until final hearing, or further order. Great and obvious inconveniencies would follow from a different practice. In the present case, it appears from the answer, that the complainant, at the time of obtaining his injunction, was liable to an execution, (if liable to an execution at all,) for more than was due, but in admitting this, the defendant denies the other grounds of equity; he denies that the complainant is entitled to all the deductions which he claims, so that a dispute remains between the parties. This case, like many other cases, shows, that taking an indefinite judgment does little for the plaintiff at law, but affords a fair pretext to the defendant at law for further delay, and is almost sure to produce a fresh suit between the parties. It is thereupon adjudged and ordered, that the injunction, in this cause heretofore issued, shall continue until final hearing of the cause, or further order.

The complainant entered a general replication to the answer of the defendant, and a commission issued, and testimony taken thereunder, and the cause submitted, &c.

HANSON, Chancellor, (October term 1801.) It appears to the Chancellor that the defendant, from his conduct, ought to be considered as having released the complainant

from his engagement. It is plain from the evidence, that the defendant had at least impressed the complainant, before he became security for *Kingsmore*, with an idea, that the money would, or might be paid from the sale of timber, and other wood, on the land, and it is extremely probable, if not certain, that the complainant was thereby induced to become a surety. Whether or not, without that inducement he would have become security, is not material. It is certain that if his engagement remains binding, he has been or may be greatly injured by the defendant's obtaining an injunction; and the question is, whether he shall sustain that injury, or the defendant, who has done the wrong, be deprived of one part of his security? The Chancellor on this question cannot hesitate, and on the papers and proceedings in the cause does not perceive how he can do otherwise than decree a perpetual injunction. *Decreed,* that the injunction, heretofore issued in this cause, be perpetual, but that each party bear his own costs.

From which decree the defendant appealed to this court; and the case standing under *rule argument* at this term, the *appellant's* death was suggested, and the case was entered *abated* (a.)

*Ridgely, Johnson,* (Attorney-General,) and *W. Dorsey,* for the appellant.

*Key,* for the appellee.

(a) It does not appear whether or not the entry of *abatement* in this case was made by the court after argument, or by the counsel concerned In the case of *Roche* vs *Johnson, et. ux* in this court sitting on the Eastern Shore, it appeared that at June term 1806, the case was standing under *rule argument,* when the death of the *plaintiff* in error was suggested.

*J Bayly.* for the defendant in error, submitted the question to the court, whether or not, this case standing under *rule argument,* the death of the plaintiff in error abated the writ of error. He referred to the acts of 17 5, *ch.* 80, and 1801, *ch* 74, *s.* 33

The Court decided that the case did not come within the provisions of the acts of 1785, *ch.* 80, and 1801, *ch* 74 But whether the writ of error abated, the case being under *rule argument,* the court were not then prepared to decide, and the final decision of the question they postponed for further consideration. Afterwards, at June term, 1807, the court decided, that a writ of error or appeal did not abate by the death of either party, if the case was standing under *rule argument* before the death was suggested. This decision was made by the court independent of the act of November 1806, *ch.* 90, *s.* 11.