## Case No. 15,366.

### UNITED STATES v. HILLEGAS.

[3 Wash. C. C. 70.] [1]

Circuit Court. D. Pennsylvania. Oct. Term, 1811.

OFFICIAL BONDS—INTERNAL REVENUE COLLECTORS—POWERS OF SECRETARY OF TREASURY—RELEASE OF SURETIES—GIVING TIME.

1. Debt on a bond, dated 19th of July, 1797, given by Michael Hillegas and others. to the United States, conditioned that Nichols, who had been appointed, in 1790, a collector of the internal revenue in the district of Pennsylvania, shall faithfully execute the office of collector of the internal revenue, and will account for, and pay over, what moneys he shall collect.

2. A balance became due by Nichols to the United States, and, without the knowledge of the sureties in his official bond, he gave to the United States, bonds and mortgages, to secure the payment of the same. which were approved by the proper officers of the treasury, and by which the amount due to the United States, was agreed to be paid in six, twelve, and fifteen months; one of which bonds was paid, and others were put in suit, by the district attorney of the United States.

3. The United States, in their political capacity, are a collective invisible body. and can only act by their officers. who constitutionally and legally administer the government, and by the agents duly appointed by them.

[Cited in Minturn v. U. S., 106 U. S. 444. 1 Sup. Ct. 408.]

4. The secretary of the treasury, is the head of the treasury department, having the general direction, superintendence, and management, of the revenues of the United States, and the collection thereof.

5. The rule of law is, that if a creditor, without the knowledge and consent of the surety, expressly or tacitly yielded, give time to the principal, by enlarging the credit beyond the period mentioned in the contract, the surety is discharged, both at law and in equity; and this rule is applicable, as well to bonds with collateral conditions, as to bonds for the payment of money; and whether the arrangement is intended for the benefit of the surety or not.

[Cited in Tiernan v. Woodruff, Case No. 14,-028; U. S. v. Campbell, 10 Fed. 820; U. S. v. De Visser, Id. 658.]

[Cited in Bank of Steubenville v. Leavitt, 5 Ohio, 214; Braman v. Howk, 1 Blackf. 394; Burke v. Cruger, 8 Tex. 66; Cunningham v. Wrenn, 23 Ill. 65; Veazie v. Carr, 85 Mass. (3 Allen) 15; Watriss v. Pierce, 32 N. H. 577.]

This was an action of debt, on a bond executed by Nichols, Eddy, and [Michael] Hillegas, to the United States, dated 19th July, 1797, in the penalty of 15,000 dollars; with condition, reciting that Nichols had been appointed ·by the supervisor of the Pennsylvania district, in 1794, a collector of the internal revenue, and the obligation to be void, if Nichols has faithfully executed, and shall faithfully execute the said office, and account for, and pay over, what moneys he shall collect, &c. Upon oyer, the defendant

[1] [Originally published from the MSS. of Hon. Bushrod Washington. Associate Justice of the Supreme Court of the United States, under the supervision of Richard Peters, Jr., Esq.]

plead performance generally, to which the replication assigns as a breach, that he had collected, and had not paid over, to the supervisor, 27,345 dollars. Rejoinder, that he had paid; and issue. Second rejoinder, that Nichols being, on the 9th of June, 1798, indebted to the United States, in the sum mentioned in the replication for moneys collected, did, on that day, execute and deliver to the supervisor, at his request, but for the use of the United States, three bonds, payable in equal sums, at six, twelve, and fifteen months, to the amount of the said debt, with warrants of attorney to confess judgments, and also, a mortgage for securing the same; and that credit was extended to the said Nichols, for said balance, for the aforesaid terms of six, twelve, and fifteen months; which bonds and mortgage were given, and credit extended to said Nichols, without the knowledge or consent of the said Eddy or Hillegas, his sureties, by means whereof, the said sureties were discharged. Surrejoinder acknowledges that the said bonds and mortgage were accepted by the United States, but, that the supervisor, in taking the same, acted without the directions or knowledge of the United States; that the same were not made and delivered by Nichols, at the instance and request of the United States; and that the United States did not enlarge the time of payment; but, that the supervisor, in doing so, had acted without the knowledge or consent of the United States. To this an issue was taken.

The facts were as follows:—Nichols was, in September, 1794, appointed, by the supervisor, a collector; and in September, 1795, he was appointed, by the president, an inspector. At the time Nichols gave the bond on which this suit was brought, he was indebted to the United States upwards of 20,000 dollars, as collector, and upwards of 6000 dollars as inspector. In May, 1798, the supervisor removed Nichols from his office, as collector; and on the 28th of June, 1798, the president removed him from his office of inspector. The above bonds, with warrants of attorney and mortgage, were given to W. Miller, who is styled supervisor; who delivered over the mortgage to the district attorney, to bring suit on. A scire facias was accordingly sued out upon the mortgage, in the name of Miller, for the use of the United States, some time in 1802. Judgment was obtained, the money raised and brought into court, and was claimed by the state of Pennsylvania, by virtue of some other or prior lien, except about 2500 dollars, which was taken out by the district attorney for the United States, by permission of the court. The United States, and the state of Pennsylvania, are still contending before the supreme court of the United States, for the residue of the money. One of the bonds, for upwards of 9000 dollars, was paid by Nichols to the supervisor, about the time it became due.

A letter was read, on behalf of the defendants, from the secretary of the treasury, dated 26th of June, 1798, to Mr. Nichols, enclosing him the copy of a letter, from the supervisor to the secretary, and desiring to know, if the information contained in this letter is true. The letter enclosed was dated the 18th of June, and contained a report of the deficiency of Nichols in his two offices of inspector and collector. This letter from the supervisor, then stated, that for the purpose of securing the United States, in relation to so large a debt, he had, with the approbation of the commissioner of the revenue, obtained from him, bonds, and warrants of attorney, and a mortgage for the amount, to get which, he had judged it best to enlarge the time of payment.

The counsel appearing disposed to argue the points of law arising in the cause, as if there had been a demurrer, WASHINGTON, Circuit Justice, inquired, whether there was any agreement or understanding amongst the counsel, to warrant this? That on the issue joined, the only question was, whether these securities were taken, and the time of payment enlarged, with the knowledge and consent of the United States? If the jury should be in the affirmative, on this question, the cause was with the defendants.

The counsel both agreed, that the intention and agreement was, to consider not only the facts put in issue, but the legal inferences from them, as involved in the trial, in the same manner as if the pleadings had so presented them. The court then recommended a special verdict, or that the jury should reserve the points of law, which met the approbation of the bar.

WASHINGTON, Circuit Justice (charging jury). The only question for your determination is, whether the securities mentioned in the pleadings were taken, and the credit to Nichols enlarged, by the United States, without the knowledge or consent of the sureties? The United States, are a collective invisible body; which can act, and can be seen only in the acts of those who administer the affairs of the government, and their agents, duly appointed and empowered to act for them. This position, which is undeniable, leads us naturally to an inquiry into the character and powers of those officers, concerned in the management of the revenues of the United States, and who appear to have had any agency in this particular business. And first, the secretary of the treasury, who is declared by law to be the head of that department. His duties are: to digest plans for improving and managing the revenue, and for the support of public credit; to prepare and report estimates of the revenue, and expenditures; to superintend the collection of the revenue; to decide on the forms of keeping and stating accounts, and making returns, and to grant warrants for money to be issued from the treasury; to act in relation to

the sales of the public lands; to make reports to congress, on such matters as may be referred to him by that body, or which shall appertain to his office; and, generally, to perform all services, relative to the finances, required of him by law. He is to superintend the collection of the duties on impost and tonnage, as he shall judge best; and the different officers employed in relation to the internal revenue, are, from time to time, for the better execution of their duties and trusts, to observe and execute such directions as they shall receive from the treasury department. See Acts Cong. 2d Sept., 1789 [1 Stat. 65]; 3d March, 1791 [Id. 215]; 8th May, 1792 [Id. 279]. The commissioner of the revenue, is a member of the treasury department, particularly charged with the superintendence, under the direction of the head of that department, of the collection of the revenues of the United States, other than those arising from duties on impost and tonnage; and is to execute such other services, conformable to the constitution of that department, as shall be directed by the secretary. The supervisor has the appointment of the collectors, and other inferior officers; and the collection of the internal revenue is to be made under his management.

Thus, it appears, that the collection of the internal revenue, is committed to the management of the supervisor, subject nevertheless, to the control and superintendence of the commissioner of the revenue, who, in his turn, is under the control and superintendence of the secretary of the treasury. In this case, not only the before-mentioned revenue officers, but the law officers of the United States, were engaged in some way or other, in the transaction which is put in issue. The supervisor, or manager of the internal revenue, in relation to the collection, agreed to give Nichols six, twelve, and fifteen months' indulgence, for paying what was at that time due to the United States, in considerataion of receiving from him certain securities. The commissioner of the revenue, under whose superintendence this officer was, approved of the measure; and the secretary of the treasury, with full knowledge of all that had been done, if he did not expressly approve, he evinced no disapprobation of what the supervisor had done, and certainly did not attempt to control him. The supervisor directed a suit to be brought on the mortgage, which was done, for the use of the United States, in express terms, and the money was raised. The supervisor received upwards of 9000 dollars, part of the money secured by the mortgage; and the district attorney took out of court between two and three thousand dollars, other part of the same; and the United States, by its officers, are now contesting with the state of Pennsylvania, the right to the residue.

After all these acts of the officers of the government, all acting within their proper spheres, it is too much to deny, that they are to be imputed to the United States, and to be considered as the acts of the United States. As there is no proof given on the part of the United States, that the sureties knew of, or consented to the arrangement made with Nichols, the fact must be taken as it is stated in the defendants' rejoinder. Consequently, your verdict must be for the United States, on the first issue, and for the defendants, on the second issue; subject to the opinion of the court on the point reserved, whether the two sureties of Nichols had not been discharged, by the United States having taken the bonds and mortgages of Nichols, in which time was given for the payment of the debt, due by him to the United States.

The jury found accordingly.

Afterwards, the question reserved for the decision of the court, having been argued, THE COURT gave the following opinion:

The point reserved for the consideration of the court is, whether the act of the supervisor, in extending the time for payment of the debt due from Nichols, the principal in this bond, discharged the sureties? The principle of law, established by the cases of 1 Selw. N. P. 311, 312, 314; 2 Ves. Jr. 540; 2 Brown, Ch. 579; 2 Bos. & P. 61; 3 Bos. & P. 365,—is, that if a creditor, without the knowledge and consent of the surety, expressly or tacitly yielded, give time to the principal, by enlarging the credit beyond the period mentioned in the contract, the surety is discharged, both in equity and at law. The reason is an obvious one. The surety guaranties the performance of the particular contract, to which he is a party, and no other. If, without his consent, this contract be varied by the act of the creditor, he is not bound by the new contract; and the old contract cannot be enforced, according to the terms of it, without injustice to the principal, and a breach of the agreement made between him and the creditor. The surety, not being himself the debtor, but in relation to the obligation of his principal, has no right to prevent the creditor from indulging the principal, to any extent the creditor may please; but, as such indulgence cannot be granted at the risk of the surety, the only legal or equitable consequence, which can result from the indulgence granted to the principal, is, to discharge the surety from his engagement.

Should the surety call upon the creditor, as he undoubtedly may, to bring suit against the principal debtor as soon as the debt becomes due, and in case of refusal, to ask the aid of a court of equity to compel him; or should he even pay the creditor, with a view to sue the principal earlier than the period to which the new agreement had extended the credit;—the creditor, in the first instance, could not obey the call, nor could the surety, in the other, sue the principal without a violation of the second agreement. The inevitable consequence, therefore, must be what has been before stated.

It was contended on the part of the United States, that the rule does not apply, where the condition of the surety is improved by the extension of credit, granted in consideration of additional security for the debt. The answer to this argument is, that whether the security is bettered or not, was a consideration for the surety to decide upon; and the court has no right to inquire into, and to weigh the good or the bad which might result from the new contract. It would lead, most certainly, to a vast variety of speculation, on which no sound principle could be built. In this case, it led unfortunately to the very loss which is now endeavoured to be fixed upon the shoulders of the surety. The principle on which the rule is founded, is not that the change of the contract, is upon calculation more or less beneficial to the surety, but that the contract, the performance of which was guarantied by the surety, has been changed without his consent.

Again, it was contended that the cases cited, do not apply to bonds with collateral conditions, but to such only as are expressly for the payment of money. How there should be a distinction, between the one kind of obligation and the other, is not perceived by the court. In both, the responsibility and the rights of the surety are the same, and the principle of the rule, equally protects him in both. In the one, he guaranties the performance of certain acts, for a breach of which damages may be recovered; and in the other, the payment of a specified sum; but in neither, is he bound to guaranty any other contract, than that to which he is a party; and of course, the principle which discharges him, in case that contract is varied, in the one case, must discharge him in the other.

But, in this case, Nichols, at the time he was dismissed from the office of collector, was indebted in a specified sum to the United States, which he was then bound to pay, and for which a suit might immediately have been brought. The surety had a right to insist that a suit should be brought. But the United States, being, by an act of a public agent, disqualified from obeying such a requisition, had it been made, the surety was discharged.

Judgment for defendant.