### RICE et al. v. FIDELITY & DEPOSIT CO. OF MARYLAND.

(Circuit Court of Appeals, Eighth Circuit. July 16, 1900.)

No. 1,276.

1. INSURANCE—REPRESENTATION—WARRANTY.

A representation in insurance is a statement by the applicant to the insurer regarding a fact material to the proposed insurance, and it must be not only false, but fraudulent, to defeat the policy. A warranty in insurance is a part of the contract, an agreement that the facts stated by the applicant are true, and a condition precedent to a recovery upon it; and its falsity in any particular is fatal to an action upon the policy.

2. EMPLOYER'S INDEMNITY BOND—WARRANTY IN APPLICATION.

A written statement made by employers to the obligor in a bond of indemnity against the dishonest acts of their employé, to the effect that they will invariably apply certain checks to his action, which the parties expressly agree by the statement itself and by the bond shall be the basis of the latter, and a condition precedent to a recovery upon it, is of the nature of a warranty, and not of a representation, and a failure to comply with the promise it contains is fatal to an action upon the bond.

3. SURETY DISCHARGED BY VIOLATION OF CONDITION.

A surety is discharged if a condition known to the obligee, upon which the surety agreed to be bound, is not complied with.

4. CONTRACT—PARTY IN DEFAULT CANNOT RECOVER.

He who commits the first substantial breach of a contract cannot maintain an action against the other contracting party for a subsequent failure to perform.

5. SAME—MODIFICATION—SUBSTITUTION OF TERMS.

Parties to a mutual agreement have the same power to modify it by contract that they had to make it, and, when they mutually agree to substitute new terms for the original stipulations of their contract, the old terms cease to have effect, and the substituted stipulations take their place, and become binding upon the parties.

**6. SAME—WAIVER.**
    A waiver is the result of an intentional relinquishment of a known right, or of such words or acts as estop the holder of the right from asserting that he did not relinquish it.

**7. SAME. .**
    The casual receipt by the obligor in a bond of a single check signed by the agent of the obligees, without the counter signature of their bookkeeper, is not sufficient evidence of a waiver by the obligor of its right to insist upon an agreement by the obligees to invariably require the counter signature of their bookkeeper upon the checks of their agent to warrant the consideration of this question by the jury.

. (Syllabus by the Court.)

In Error to the Circuit Court of the United States for the District of Nebraska.

T. J. Mahoney, for plaintiffs in error.

Myron L. Learned (John L. Kennedy, on the brief), for defendant in error.

Before CALDWELL, SANBORN, and THAYER, Circuit Judges.

SANBORN, Circuit Judge. The assignment of errors in this case challenges the rulings of the court below in the trial of an action upon a bond of indemnity against loss from certain acts of fraud or dishonesty of an employé of the obligees in the bond. The bond was dated on July 25, 1895, was for a term of one year, and the period of indemnity was subsequently twice extended one year at a time, so that the time covered by the terms of the bond and its renewals was three years from July 25, 1895. The obligor was the defendant in error, the Fidelity & Deposit Company of Maryland, a corporation; the obligees were Rice Bros. & Nixon, a co-partnership composed of William H. Rice, Thomas J. Rice, and George W. Nixon, the plaintiffs in error; and their employé against whose fraudulent or dishonest acts the fidelity company promised indemnity was Walter J. Perry. The plaintiffs pleaded in their complaint that between September 27, 1895, and July 25, 1898, the employé, Perry, had been guilty of numerous acts of fraud and dishonesty which entailed losses upon them, against which the fidelity company had promised indemnity by its bond. The most heinous of these acts consisted in the drawing of funds by Perry from the bank account of his employers, and the misappropriation of the moneys so drawn in various ways. In its answer to this complaint the fidelity company first either denied, or confessed and avoided, the various charges against Perry, and then pleaded as a separate defense that the plaintiffs agreed with it that all checks drawn by Perry on their bank account during the life of the bond and its renewals should be countersigned by their bookkeeper, John W. Gribble, and that they had entirely failed to keep this stipulation of their contract. There was a trial of the issues presented by these pleadings, and a verdict and judgment for the company.

The first complaint which counsel for plaintiffs in error urges against the action of the court below upon the trial is that it received in evidence over their objection a certain written instrument signed by Rice Bros. & Nixon, and dated August 30, 1895, to the effect that the counter signature of John W. Gribble would be invariably re-

quired on all checks drawn by Perry in their behalf, and that the court charged the jury that if they believed that this instrument was made and delivered to the company before the bond was delivered, and that the plaintiffs permitted Perry to draw checks on their behalf without the counter signature of Gribble, these facts constituted a complete defense to the action. The argument of counsel is that these rulings were erroneous because the statement in the written instrument that the checks drawn by Perry should be countersigned by Gribble was a representation, and not a warranty, and hence a failure to comply with it constituted no defense to the action, unless the statement was not only false, but fraudulent and material to the risk, and because the proof was that this instrument was not made or delivered until the bond had been delivered, and there was no evidence to the contrary. For the purpose of the determination of the question presented by this argument, the evidence of the plaintiffs in error will be conceded to be true, and the claims of their counsel relative to the facts of this case will be assumed to be well founded. Under this concession and assumption, these are the facts material to the issues now under discussion:

Before the bond upon which this action is founded was delivered to the obligees, and before it became effective, the company requested them to answer in writing certain questions, and they did so. Two of those questions, together with the contract at the foot of the instrument containing the answers, read in this way:

"10. (a) Will he [the employé, Perry] be authorized to sign checks on your behalf? Ans. Yes.

"(b) Will the counter signature of any other person be invariably required. If so, whose? Ans. No.

"It is agreed that the above answers are to be taken as conditions precedent, and as the basis of the said bond applied for, or any renewal or continuation of the same that may be issued by the Fidelity & Deposit Company of Maryland to the undersigned upon the person above named."

This instrument was dated August 9, 1895, and was signed by the plaintiffs in error. After the bond had been made and delivered, the company again requested answers in writing to the same questions, and in response to that request the plaintiffs in error made the following answers, and signed and delivered to the company the instrument dated August 30, 1895, which is the subject of the controversy in hand. That instrument contained the following questions, answers, and contract:

"10. (a) Will he be authorized to sign checks on your behalf? Ans. Yes.

"(b) Will the counter signature of any other person be invariably required? If so, whose? Ans. Yes. John W. Gribble, bookkeeper.

"This is to certify that the answers herein given to No. 10, 'a' and 'b,' are to be substituted for any other prior statements that have been made by us in relation to the application of Walter J. Perry for a bond in the penalty of ten thousand dollars as manager in our employ, at South Omaha, Neb. No other statements except No. 10, 'a' and 'b,' shall be affected by this certificate. It is agreed that the above answers are to be taken as conditions precedent, and as the basis of the said bond applied for, or any renewal or continuation of the same that may be issued by the Fidelity & Deposit Company of Maryland to the undersigned upon the person above named.

"Dated at Chicago, Ill., this 30th day of August, 1895.

"Signature of employer: Rice Bros. & Nixon,

"By W. H. Rice, Member of Firm."

This instrument was delivered to the defendant in error before any of the acts of fraud and dishonesty on account of which this action was brought had been committed by Perry. The bond contains this recital:

"And whereas, the employer has delivered to the Fidelity & Deposit Company of Maryland, a corporation of the state of Maryland, hereinafter called the 'Company,' a statement in writing relative to the duties, responsibilities, and check to be used upon the employé in said position, and other matters: Now, therefore, in consideration of the sum of one hundred dollars paid as a premium for the period from July 25th, 1895, to July 25th, 1896, at twelve o'clock noon, and upon the faith of the said statement as aforesaid by the employer, it is hereby agreed and declared" that the company will indemnify the obligees on certain conditions named in the bond.

The first contention to be considered upon this state of facts is the claim of counsel that the plaintiffs' statement and agreement contained in the instrument of August 30, 1895, to the effect that the counter signature of Gribble, the bookkeeper, would be invariably required on Perry's checks on their account, and that this statement should be taken as a condition precedent and as the basis of the bond, together with their complete failure to comply with this provision of their contract, constituted no defense to the action, because the statement and agreement were representations, and were not warranties. The terms "representations" and "warranties" are imported into this case from the law of insurance. Under the law upon that subject, they generally and properly describe statements of existing facts, not promises or prophecies regarding future acts. In insurance a representation is a statement by the applicant to the insurer regarding a fact material to the proposed insurance, and it must be not only false, but fraudulent, to defeat the policy. A warranty, in the law of insurance, is a binding agreement that the facts stated by the applicant are true. It is a part of the contract, a condition precedent to a recovery upon it, and its falsity in any particular is fatal to an action upon the policy. Jeffries v. Insurance Co., 22 Wall. 47, 54, 22 L. Ed. 833; Insurance Co. v. France, 91 U. S. 510, 512, 23 L. Ed. 401; Anderson v. Fitzgerald, 4 H. L. Cas. 483, 487; Cazenove v. Assurance Co., 6 C. B. (N. S.) 437, 450, 451, 6 Jur. (N. S.) 826; Price v. Insurance Co., 17 Minn. 497 (Gil. 473). A careful examination of the statement in the case in hand discloses the fact that it has all the attributes of a warranty, and essential characteristics which clearly distinguish it from a representation. A representation is a mere declaration of a fact, but it is neither a condition precedent nor a part of the contract, while a warranty is both. The statement in issue that the counter signature of Gribble will be invariably required on the checks of Perry upon the account of the plaintiffs is a part of the contract between the parties to this suit, and a condition precedent to a recovery upon it, because the bond recites that it rests upon the faith of this statement, and because the plaintiffs expressly agree in the written instrument of August 30, 1895, that their statement contained therein shall be taken as a condition precedent and as the basis of the bond. This conclusion has not been reached without a careful consideration of the argument of counsel for the plaintiffs in error that the state-

ment in this instrument is a mere declaration of an unexecuted intention, and that the failure to comply with such a declaration is not fatal to a recovery upon a contract induced by it. Neither the statement to which he cites us in 2 Brandt, Sur. § 404, that "a distinction has been taken between a misrepresentation of an existing fact and of an unexecuted intention, and the latter has been held not to be such a fraud as will discharge a surety," nor the authorities cited in the note to that section, have escaped our attention. Those authorities are Gage v. Lewis, 68 Ill. 604; Towle v. Society, 3 Giff. 42; Benham v. Assurance Co., 7 Welsb., H & G. 744. In Gage v. Lewis no question of liability for the breach of a contract or warranty was presented. The answer to the action on the obligation of the surety was that the obligee had induced the surety to sign the obligation by the false and fraudulent representation that he would not again engage in a business of the character which he had just sold, and that immediately after the execution of the obligation he again entered upon such a business. Fraud may not be predicated of a promise or a prophecy, and the court held that this representation was not a fraud, but was, at most, a contract. In Towle v. Society the defense pleaded to an action on an employers' insurance policy against the dishonest acts of their employé was that in the application for the policy the employers had stated that the employé's accounts would be "checked weekly by the surveyor of taxes"; that the policy recited that this statement was its basis, and contained a stipulation that any misrepresentation in any declaration in consequence of which the policy was granted by the company would render the policy void; and that in fact the accounts of the employé were not checked weekly by the surveyor of taxes. It turned out upon the trial that the declaration was not made by the employers, but by a third party, and that the statement it contained was made in good faith and was substantially correct. There was no agreement that the declaration was a part of the contract of the parties, or that its truth was a condition precedent to a recovery upon the policy; and the court held that it did not constitute a warranty, but was a mere declaration of a person who was not a party to the contract relative to the course which another party intended to pursue, and that the failure of the latter to follow that course was not a defense to the action. 3 Giff. 55. In Benham v. Assurance Co., an action upon an employers' policy of insurance against the dishonest acts of their employé, the facts were that the employers made and delivered an application, as the basis of the policy, in which they declared that the accounts of the employé would be examined every fortnight by the finance committee, but they were not so examined; and the policy provided that "any fraudulent misstatement or suppression in any declaration in consequence of, and with express reference to, which a policy of guaranty is granted by the company, renders such policy void from the beginning." There was no contract between the parties that the statements in the application should be a part of their agreement, or that its truth should be a condition precedent to a recovery; and the court held that it was not a warranty, but a mere

representation, and that, if it was made in good faith, a mere failure to make it true by their subsequent action would not necessarily defeat the action upon the policy. These cases are apt illustrations of declarations which are not warranties, but they only serve to emphasize the distinction between the representations which they contained and the statement and contract in the case in hand. The crucial distinction between a representation and a warranty is that the one is not, and the other is, a part of the contract between the parties, and that the truth of the one is not, and the truth of the other is, a condition precedent to a recovery upon the policy or bond to which they relate. In the cases cited by the plaintiffs in error which we have been reviewing, there was no agreement of the parties that the declarations which they contained were parts of their contracts, no binding agreement that they should be true, no contract that their truth should constitute a condition precedent to a recovery upon them. In the case at bar the parties expressly agreed in writing that the statement of the employers was a part of their contract; that it should be not only the basis of the bond, but a condition precedent, without compliance with which there could be no recovery upon the obligation. The conclusion is irresistible that under this agreement the declaration in this case was of the nature of a warranty, and not of a representation, and our conclusion is: A written statement made by employers to the obligor in a bond of indemnity against the dishonest acts of their employé to the effect that they will invariably apply certain checks to his action, which the parties expressly agree, by the statement itself and by the bond, shall be the basis of the latter, and a condition precedent to a recovery upon it, is of the nature of a warranty, and not of a representation, and a failure to comply with the promise it contains is fatal to an action upon the bond. Indemnity Co. v. Wood, 19 C. C. A. 264, 73 Fed. 81, 84; American Credit Indemnity Co. v. Carrollton Furniture Mfg. Co., 36 C. C. A. 671, 95 Fed. 111, 113.

There are other propositions of law which are fairly applicable to this contract that lead to the same result. The complaint alleges and the fact was that the plaintiffs made an agreement of employment with Walter J. Perry at the time this bond was made, under which he became liable to them for the losses which they claimed to have sustained through his dishonest and fraudulent acts. The bond of the fidelity company in suit recited this employment, and gave to the plaintiffs further indemnity to the amount of $10,000 against these losses. The legal effect of these contracts was to create the relation of principal and surety between Perry and the fidelity company. The plaintiffs were necessarily aware of this relation. They agreed in so many words by the instrument of August 30, 1895, that the counter signature of their bookkeeper on the checks of Perry against their account should be a condition of the liability of this surety; and the general rule is that if a condition, known to the obligee, upon which a surety agrees to be bound, is not complied with, the surety is discharged. 2 Brandt, Sur. § 403; Jones v. Keer, 30 Ga. 93, 95; Cunningham v. Wrenn, 23 Ill. 64, 65; Lynch v. Colegate, 2 Har. & J. 34, 37; Holl v. Hadley, 4 Nev. &

M. 515, 520; Bonser v. Cox, 4 Beav. 379, 384; U. S. v. Hillegas, 3 Wash. C. C. 70, 76, Fed. Cas. No. 15,366; Whitcher v. Hall, 5 Barn. & C. 269; Combe v. Woolf, 8 Bing. 156, 161.

Again, the bond and the instrument of August 30, 1895, must be read, construed, and enforced together. The contract of these parties consists of all the stipulations and agreements in both instruments. Both instruments are parts of a single contract. When they are so read, the agreement of these parties is found to contain mutual covenants,—a covenant by the employers that they will invariably require the counter signature of their bookkeeper, Gribble, on all checks of Perry against their account, and a covenant of the fidelity company that it will pay the losses resulting from the dishonest and fraudulent acts of Perry. Now, the plaintiffs have entirely failed to keep their covenant. Consequently they cannot enforce the fulfillment of the covenant of the fidelity company. He who commits the first substantial breach of a contract cannot maintain an action against the other contracting party for a subsequent failure to perform. Cattle Co. v. Martindale, 63 Fed. 84, 89, 11 C. C. A. 33, 38, 27 U. S. App. 277, 284, 285; Norrington v. Wright, 115 U. S. 188, 204, 205, 6 Sup. Ct. 12, 29 L. Ed. 366; Filley v. Pope, 115 U. S. 213, 6 Sup. Ct. 19, 29 L. Ed. 372; Rolling Mill v. Rhodes, 121 U. S. 255, 261, 264, 7 Sup. Ct. 882, 30 L. Ed. 920; Beck & Pauli Lith. Co. v. Colorado Milling & Elevator Co., 52 Fed. 700, 3 C. C. A. 248, 10 U. S. App. 465, 470; King Philip Mills v. Slater, 12 R. I. 82; Smith v. Lewis, 40 Ind. 98; Hoare v. Rennie, 5 Hurl. & N. 19; Pope v. Porter, 102 N. Y. 366, 371, 7 N. E. 304; Dwinel v. Howard, 30 Me. 258; Robson v. Bohn, 27 Minn. 333, 344, 7 N. W. 357; Reybold v. Voorhees, 30 Pa. St. 116, 121; Stephenson v. Cady, 117 Mass. 6, 9; Branch v. Palmer, 65 Ga. 210; Fletcher v. Cole, 23 Vt. 114, 119.

The result is that there was no error in the charge of the court that the failure of the plaintiffs to require the counter signature of their bookkeeper upon the checks of Perry upon their account was fatal to their action, if the agreement of August 30, 1895, was the basis of the bond.

The second contention of counsel, however, is that this instrument of August 30, 1895, was improperly received in evidence, and that the court erroneously charged that a failure to comply with its terms was a defense to the action if it was delivered and accepted before the bond was executed, because the uncontradicted evidence was that it was not made and delivered until after the execution and delivery of the bond. It is conceded for the purpose of this decision that the evidence is conclusive that the agreement of August 30, 1895, was not made until after the execution and delivery of the bond. But before the instrument of August 30, 1895, was made, the parties to that agreement had made a contract evidenced by the bond and by the prior instrument of August 9, 1895. Their contract was finished, and it was complete. Nevertheless they had not lost their right to contract. They had the same right to abrogate or modify the agreement they had made that they originally had to make it. They had agreed that certain answers in the in-

103 F.—28

strument of August 9, 1895, should be taken as conditions precedent, and as the basis of the bond. They had the right by mutual agreement to modify this contract, and to substitute other answers as the conditions precedent and as the basis of the bond. They did this, and, that there might be no doubt or cavil concerning it, they put this contract of modification in writing, and by the instrument of August 30, 1895, expressly agreed that the answers given therein to the questions here under consideration should be substituted for all prior statements made in reference to the bond here in suit. The necessary effect of this subsequent agreement was to modify the original contract, and to substitute the answers in the instrument of August 30, 1895, for those in the instrument of August 9, 1895, as the conditions precedent and the basis of the obligation. Parties to a mutual agreement have the same power to modify it by contract that they have to make it, and, when they mutually agree to substitute new terms for the original stipulations of the contract, the old terms cease to have effect, and the substituted stipulations take their place. The result is that the agreement of August 30, 1895, became a part of the contract of the parties from the date of its delivery, and the failure of the plaintiffs to comply with its terms was fatal to their recovery, notwithstanding the fact that it was not made until after the bond was delivered. The only error of the court below was that it gave a charge too favorable to the plaintiffs. It charged that the defense based on this agreement was available to the defendant only in case the substituted agreement was made before the bond was executed, when it should have instructed the jury that it was available and constituted a complete defense to the action whether it was made before or after the delivery of the bond. This error could not have prejudiced the plaintiffs, and error without prejudice is no ground for reversal. U. S. v. Shapleigh, 54 Fed. 126, 4 C. C. A. 237, 12 U. S. App. 26; U. S. v. Patrick, 73 Fed. 800, 20 C. C. A. 11, 36 U. S. App. 645; Ward v. Cochran, 71 Fed. 127, 18 C. C. A. 1, 36 U. S. App. 307; Jones v. Allen, 85 Fed. 523, 29 C. C. A. 318, 56 U. S. App. 529; Railway Co. v. Price, 97 Fed. 423, 38 C. C. A. 239; National Bank of Commerce v. First Nat. Bank, 61 Fed. 809, 10 C. C. A. 87, 27 U. S. App. 88; Railroad Co. v. Stoner, 51 Fed. 649, 2 C. C. A. 437, 10 U. S. App. 209.

Another specification of error is that the trial court improperly struck from the case, and refused to submit to the jury, evidence of a waiver of the defense under consideration. That evidence consisted of proof of the fact that on July 25, 1896, the general agent of the defendant received for it, in payment of the premium on the bond of a third person, a check for $25 signed by the plaintiffs, by Perry, as their agent, without the counter signature of their bookkeeper, Gribble, deposited it in a bank, and accounted to his principal for its proceeds. The argument is that the receipt of this check was notice to the company that the plaintiffs were permitting Perry to issue checks on their account without the counter signature of their bookkeeper, and that this notice, and the subsequent renewal of the bond on July 17, 1897, constituted some evidence of

a waiver of the requirement of the counter signature, which should have been submitted to the jury. But a waiver is either the result of an intentional relinquishment of a known right, or an estoppel from enforcing it. To constitute a waiver, there must be an intention to relinquish the right, or there must be words or acts calculated to induce the other contracting party to believe, and which deceive him into the belief, that the holder of the right has abandoned it; and the party deceived must have acted on his belief, so that an assertion of the right will inflict upon him a loss he would not have sustained if its holder had not appeared to relinquish it. Society v. McElroy, 83 Fed. 631, 640, 28 C. C. A. 365, 374, 49 U. S. App. 548, 564; Warren v. Crane, 50 Mich. 301, 15 N. W. 465; Insurance Co. v. Thomas, 82 Fed. 406, 408, 409, 27 C. C. A. 42; Bish. Cont. § 793. There was nothing in the evidence received which tended to show that the defendant ever intended to relinquish its right. There was nothing in the casual receipt by the general agent of this company of a single check of Perry, without the bookkeeper's counter signature, calculated to induce the plaintiffs to believe that the requirement of the contract in that regard had been abandoned or waived. No evidence was introduced to show that they were induced by that fact to believe, or that they did believe, that any such waiver had been made. The renewal of the bond on July 17, 1897, which they accepted, conclusively shows that they did not suppose it had been waived. That renewal expressly provides, in writing, that it is made subject to all the conditions and covenants of the original bond. A verdict of waiver could not have been sustained upon this evidence, and there was therefore no error in the action of the court in striking the check and the evidence concerning it from the case.

All the specifications of error which relate in any way to the trial of the issue presented by the defense that the plaintiffs failed to require the counter signature of their bookkeeper upon the checks of Perry have now been considered, and the conclusion is not only that there was no error prejudicial to the plaintiffs in the trial of that issue, but that the uncontradicted evidence established that defense, and interposed a complete bar to the plaintiffs' recovery. There are many specifications of error relative to the rulings of the court in the trial of the other issues presented by the pleadings in this case, but it is unnecessary to consider them, because, even if some of these rulings were erroneous, they could not have been prejudicial to the plaintiffs, since the defendant established a complete defense on the ground already considered, and the judgment below was right, whatever the rulings or the result of the trial of the other issues may have been. The judgment below is accordingly affirmed.