PHENIX INS. CO. OF BROOKLYN, N. Y., v. GUARANTEE COMPANY
OF NORTH AMERICA.

(Circuit Court of Appeals, Eighth Circuit. April 21, 1902.)

No. 1,602.

**1. INDEMNITY INSURANCE — CONSTRUCTION OF CONTRACT — WARRANTIES IN APPLICATION.**

An application to a surety company for a bond to secure the faithful performance of his duties by the cashier of the applicant, a corporation, contained the following question and answer: "Will he receive remittances from customers on open accounts? If so, how often will you render customers a statement of balances due by them, and by whom will this be done? This should be done by some other person than the applicant, and is important as a means of verifying balances appearing on the ledger." Answer: "Yes. Monthly by bookkeeper." *Held*, that such answer was not a warranty that such monthly statements should be delivered to the customers, or deposited in the mail, by the bookkeeper personally, but that it was complied with where such statements were made out by the bookkeeper, and deposited by him, in sealed envelopes, in the receptacle used for outgoing mail, according to the customary practice of the corporation's business.

**2. SAME.**

Such application also contained the following question and answer: "It is suggested: (1) That all moneys and checks received be deposited intact in bank, and all disbursements be made either by check or from a petty cash fund drawn from the bank as required; and (2) that all checks received be indorsed 'For deposit,' to prevent any loss or conversion. To what extent will these practices be followed?" Answer: "Fully." *Held*, that the employer complied with such warranty by adopting a regulation requiring all checks to be deposited, indorsed as therein specified, and by exercising reasonable supervision over its cashier to see that the practice was pursued; that the answer to such question could not be construed as an absolute warranty by the employer that its cashier would deposit all checks, properly indorsed, and to relieve the surety from liability for the failure to make such deposits, contrary to the employer's regulations, and without its knowledge, where it exercised reasonable diligence in the premises, which would render the contract nugatory as one for indemnity.

Sanborn, Circuit Judge, dissenting.

In Error to the Circuit Court of the United States for the District of Nebraska.

H. C. Brome (A. H. Burnett, on the brief), for plaintiff in error.

Warren Switzler (L. C. Cooper and Clency St. Clair, on the brief), for defendant in error.

Before CALDWELL, SANBORN, and THAYER, Circuit Judges.

CALDWELL, Circuit Judge. The Phenix Insurance Company of Brooklyn, N. Y., the plaintiff in error, hereafter called the "plaintiff," is a fire insurance company incorporated under the laws of the state of New York and carries on its business in other states of the Union, including the state of Nebraska, having its state agency for that state in the city of Omaha. The Guarantee Company of North America, the defendant in error, hereafter called the "defendant," is a surety company incorporated under the laws of the dominion of Canada, and has an agency and carries on its business in the state of Nebraska.

The plaintiff employed Fred S. Kelly as its cashier at its state agency in Omaha, and required him to give security for the honest and faithful performance of his duties as such.    Upon application therefor, the defendant, on the 27th day of May, 1895, became the surety of Kelly in the sum of $5,000 for one year, for which it received a premium of $50, and issued a policy, termed in the instrument a "bond," in the usual form of such instruments, which was renewed and extended from year to year upon the payment of the like premium.    While the policy was in force, Kelly embezzled and converted to his own use moneys of the plaintiff amounting approximately to $5,000.    The defendant refused to pay this loss, and thereupon the plaintiff brought this suit. There was a trial to a jury, and a general verdict for the plaintiff. The jury also made special findings in answer to 25 interrogatories propounded by the court.    On motion the court set aside the general verdict for the plaintiff and rendered judgment for the defendant on the special findings, which are as follows:

"The jury are instructed to answer the following questions: First. Did plaintiff, at the time of making the application to defendant for the insurance bond, know that said Fred S. Kelly had speculated, or gambled, or engaged in other disreputable and unlawful pursuits, or that he had been irregular in his habits or associations, or in his attention to his duty?  Answer. No. Second. Did plaintiff, at the time of making application for the last renewal of said bond, know the facts stated in the foregoing question?  Answer. No. Third. Did the plaintiff make out and render to its several agents or customers monthly statements?    Answer. Yes.    Fourth. Were such monthly statements made out and rendered by the bookkeeper of the plaintiff, or were they, after being made out, intrusted to the care of said Fred S. Kelly, and did he withhold any of them from such customers?  Answer. They were made out by bookkeeper, and deposited in mailing basket, as customary. Fifth. Were the books of said Fred S. Kelly balanced and verified, and a monthly trial balance regularly rendered?    Answer. Yes.    Sixth. Were the books of account of the said Fred S. Kelly examined and audited by the bookkeeper monthly, and by the auditor of the plaintiff semiannually, and all money, securities, vouchers, and property on hand examined and verified, and a balance sheet prepared, and the correctness of same certified to? Answer. Yes.    Seventh. At each periodical examination was the plaintiff's pass book balanced by the bank, and verified with the bank ledger, and compared with plaintiff's cash book by the party examining?    Answer. Yes. Eighth. Did plaintiff, by its regulations, require that all checks drawn should be signed by its agent, H. B. Coryell, and countersigned by Fred S. Kelly? Answer. Yes.    Ninth. Did said Fred S. Kelly sign checks of plaintiff without same being also signed by said Coryell?    Answer. No.    Tenth. If your answer to the last question is 'Yes,' then answer when plaintiff first knew of such fact,—whether before or after said Kelly left the employ of plaintiff? Answer. ———.    Eleventh. Did the said Fred S. Kelly receive any checks belonging to the plaintiff which he did not deposit to the account of plaintiff in the bank, but which he indorsed, and received the money thereon? Answer. Yes.    Twelfth. If you answer the last question 'Yes,' then answer, Did the plaintiff know of his so doing before he quit the employ of plaintiff? Answer. Yes.    Thirteenth. If you answer the last question above 'Yes,' then give the date, as near as possible, when the plaintiff first knew such fact. Answer. On or about the day of Kelly's discharge."

We agree with the trial court that these special findings cover all the issues embraced in the pleadings, and raise the questions in controversy in the case.    Among the questions propounded by the defendant to the plaintiff, and made part of the application for the policy, was this:

"(9) Will he receive remittances from customers on open accounts? If so, how often will you render customers a statement of balances due by them, and by whom will this be done? This should be done by some other person than the applicant, and is important as a means of verifying balances appearing upon the ledger."

To this question the plaintiff answered: "Yes. Monthly by book-keeper."

Question 17 propounded by the defendant to the plaintiff reads as follows:

"(17) It is suggested: (1) That all moneys and checks received be deposited intact in bank, and all disbursements be made either by check or from a petty cash fund drawn from bank as required; and (2) that all checks received be indorsed, 'For Deposit,' to prevent loss or conversion. To what extent will these practices be followed?"

The answer to this question was, "Fully."

The action of the trial court in setting aside the general verdict for the plaintiff and rendering judgment for the defendant on the special findings was based on the plaintiff's answers to these two questions, and, in order that the grounds of its judgment—which are the same upon which it is sought to be upheld—may be clearly understood, we here insert all the court said on the subject:

"The special finding of facts that the monthly statements guarantied to be rendered by the bookkeeper of plaintiff to the several agents or customers of plaintiff is that such monthly statements were rendered by the bookkeeper making the same out and depositing them in the mailing basket. This I do not think was a compliance with the guaranty upon the part of plaintiff. They should have been either delivered to the customers or deposited in the United States mail. The jury further find the fact to be that said Kelly received checks belonging to the plaintiff which he did not deposit to the account of plaintiff in the bank, but which he indorsed, and received the money thereon. It seems to me that, if this provision in the policy is a guaranty, it was a guaranty upon the part of the plaintiff that the deposit of such checks would be made by Kelly. At the trial I was disposed to think that all that plaintiff was required to do was to adopt a regulation requiring this to be done on the part of Kelly, and that, if he violated the regulation in this respect without the knowledge of the plaintiff, that defendant would be liable therefor. I have, however, upon more mature consideration, reached the opposite conclusion. It is further found by the jury that said Kelly deposited checks belonging to plaintiff without having the same indorsed 'For Deposit.' If we are right in saying that this provision in the application was a guaranty upon the part of plaintiff, then the guaranty was violated."

We think the trial court misconstrued the warranty contained in the answers to questions 9 and 17 of the application. By its answer to question 9 the plaintiff agreed that it would render its customers a statement of the balance due by them, and that this should be done, not by its cashier, but by its bookkeeper. This warranty was satisfied by requiring its bookkeeper to make out the statements, and place them, when made out, in sealed envelopes in the receptacle used for outgoing mail. It did not bind itself nor agree that its bookkeeper should personally deposit these statements in the post office. The jury found that the statements were made out by the bookkeeper, and that, when made, they were placed in the mailing basket, according to the customary practice. It would be a most unreasonable construction of this warranty to hold that it required the plaintiff

to exclude its cashier from all possible access to its mail, and to that end conduct its business and correspondence in a different mode from that pursued by all persons and corporations engaged in like business pursuits. By its answer to question 17 the plaintiff did not agree that it would employ a person to watch its cashier, and see that he deposited all the money and checks received by him in bank in the form in which he had received the same, and that he would make all disbursements by check, and that all checks should be indorsed "For Deposit." If it had undertaken to do this, it would not have needed a bond of indemnity. It was asked to what extent the practice would be followed, and it answered, "Fully." The natural and plain meaning of this answer was that it would adopt that method of transacting its business, and exercise a reasonable supervision over its cashier to see that the practice was pursued. We cannot give the warranty any greater scope than this without leading to an absurdity. In the eleventh, twelfth, thirteenth, fourteenth, and sixteenth special findings the jury found that, while the cashier did receive certain checks belonging to the plaintiff, which he did not deposit to the plaintiff's account in bank, and while he did not indorse all checks "For Deposit," yet that his conduct in this respect was contrary to regulations made by the plaintiff, and that the fact of his violation of duty was not known to the plaintiff until his discharge. The jury further found in the sixth finding that the accounts of Kelly were examined and audited by the bookkeeper monthly, and by the plaintiff's auditor semiannually, and that in such examinations the balance sheet was certified to as correct by the examining officer. They further found that the cashier succeeded in keeping his accounts in such a manner that the acts of dishonesty of which he was guilty were not discovered when his accounts were audited and examined. In effect, the contention of the defendant is that the plaintiff warranted that its cashier, Kelly, would indorse all checks "For Deposit," and deposit the proceeds in bank to the credit of the plaintiff, and pay the same over to its proper agent; and that the plaintiff took upon itself the burden of seeing that this was done, and that, if Kelly was guilty of a breach of his duty in this regard, although the fact was unknown to the plaintiff, and could not be discovered by it with reasonable diligence, it nevertheless constituted a breach of the plaintiff's warranty, and imposed no liability on the defendant to pay the resulting loss. Such a construction of the contract would devest it of all semblance to a contract of indemnity against Kelly's malfeasance or misfeasance. If the indemnity company cannot be held liable in this case, it never can be held liable in any case. In short, if we give the alleged warranties the scope which the defendant claims should be given to them, no bond of indemnity would ever be taken out by an employer, because he would assume the full burden of watching his employé, and relieve the indemnity company of all responsibility.

The special findings of the jury show that plaintiff was entitled to recover in the action, and the judgment of the circuit court for the defendant is reversed, and the cause remanded, with instructions to that court to render judgment on the general verdict in favor of the plaintiff for $4,836 and interest computed to the day of the rendition

of said verdict, amounting to $603.69, as agreed upon by the parties, and such interest on said verdict after that date as may be allowed by the laws of Nebraska, and for costs.

SANBORN, Circuit Judge (dissenting). I agree with the district judge who tried this case below, and I think the judgment he rendered should be affirmed. It is neither a fulfillment nor a lawful excuse for a failure to fulfill a covenant to pay a debt, to perform an act, or to cause the performance of an act by a third party that the covenantor made a rule for the payment of the debt, or for the performance of the act, and carefully inspected, but was ignorant of, the failure to make the payment or the failure to do the deed while the debt was not paid and the covenanted act was not performed. It is true, as the majority remark, that the requirement of such a covenant is not that the promisor shall pay a watchman or a spy to see whether or not the payment is made or the covenanted deed is done. The requirement of the covenant is more. It is that the promisor shall make the payment, or cause the third party to perform the covenanted act. And a careful inspection by the covenantor of the acts of the third person, and the adoption of a rule that such person shall do a promised act, that he shall make a covenanted indorsement of checks with the words "For Deposit," and ignorance of his failure while he utterly fails to make the indorsement are no more a fulfillment, or a lawful excuse for the failure to fulfill, a covenant that he shall do the act, than a careful inspection of the failure to make a promised payment of a debt, the adoption of a rule that it shall be paid, and ignorance that it is not paid while no part of it is in fact paid are a fulfillment, or a lawful excuse for a failure to fulfill, a covenant to pay a debt. The very purpose of a covenant is to relieve the covenantee of all inquiry relative to the matters covenanted, and to impose upon the covenantor the absolute obligation to make them as he guaranties that they shall be; and nothing short of that is a fulfillment of his warranty. The application and bond in this case are to be read together, and they constitute but a single contract. By this contract the plaintiff covenanted with the defendant that during the term of the bond its employé Kelly, who was under its control, and subject to its orders, should "fully" practice indorsing the checks he received with the words "For Deposit" for the purpose of preventing the loss or conversion by him of the funds those checks represented; and the defendant, as the surety of Kelly on his bond, covenanted that it would insure the plaintiff against loss by his dishonest or fraudulent acts. In this state of the case the performance of the covenant of the plaintiff was a condition precedent to the liability of the defendant, the surety on the bond. The plaintiff received the bond, and knew that the defendant stood in the relation of a surety. By the application which it tendered to induce the plaintiff to become the surety it agreed in so many words that the indorsement of the words "For Deposit" by its cashier, Kelly, on the checks he received, should be a condition of the defendant's liability as surety. And the general rule is that if a condition known to the obligee, upon which a surety agrees to be bound, is not complied

with, the surety is discharged.    2 Brandt, Sur. § 403; Jones v. Keer,. 30 Ga. 93, 95; Cunningham v. Wrenn, 23 Ill. 64, 65; Lynch v. Colegate, 2 Har. & J. 34, 37; Holl v. Hadley, 4 Nev. & M. 515, 520; Bonser v. Cox, 4 Beav. 379, 384; U. S. v. Hillegas, 3 Wash. C. C. 70, 76, Fed. Cas. No. 15,366; Whitcher v. Hall, 5 Barn. & C. 269;. Combe v. Woolf, 8 Bing. 156, 161.

Again, the contract of these parties consisted of mutual covenants, —a covenant by the plaintiff that its cashier, Kelly, should invariably· indorse its checks with the words "For Deposit," and a covenant by. the defendant that it would pay the losses resulting from the fraudulent and dishonest acts of Kelly if he failed to do so.    The plaintiff failed to fulfill any part of its covenant.    It failed in toto.    Kelly received and used many of his employer's checks, but he never indorsed one of them with the words "For Deposit" during the entire term of the bond.    As the plaintiff has committed a complete breach of its covenant, it cannot enforce the fulfillment of the covenant of˥ the defendant.    He who commits the first substantial breach of a covenant cannot maintain an action against the other contracting party for a subsequent failure to perform it.    Rice v. Deposit Co., 103 Fed. 427, 432, 433, 43 C. C. A. 270, 276; Imperial Fire Ins. Co. v. Coos· Co., 151 U. S. 463, 467, 14 Sup. Ct. 379, 38 L. Ed. 231; Guarantee Co. of North America v. Mechanics' Sav. Bank & Trust Co. (decided˙ by the supreme court Jan. 6, 1902) 22 Sup. Ct. 124, 46 L. Ed. ——; Hubbard v. Association, 100 Fed. 719, 40 C. C. A. 665; Seal v. Insurance Co., 59 Neb. 253, 80 N. W. 807; Brady v. Association, 60 Fed. 727, 9 C. C. A. 252.    The case of Rice v. Fidelity Deposit Co., 103 Fed. 427, 432, 433, 43 C. C. A. 270, 276, which was decided by this court on July 16, 1900, was, in my opinion, identical in every essential particular with the case in hand, and the law applicable to the facts of these cases has not changed since that case was decided. . In that case the covenant contained in the answer of the employer in the application for the bond was that the checks should be countersigned by the bookkeeper, and the bookkeeper did not countersign· them.    We held that the employer could not recover, and, among other things, we said:

"The legal effect of these contracts was to create the relation of principal and surety between Perry and the fidelity company.    The plaintiffs were necessarily aware of this relation.    They agreed, in so many words, by the instrument of August ·30, 1895, that the countersignature of their bookkeeper on the checks of Perry against their account should be a condition of the liability of this surety; and the general rule is that if a condition, known to the obligee, upon which a surety agrees to be bound, is not complied with, the surety is discharged.    2 Brandt, Sur. § 403; Jones v. Keer, 30 Ga. 93, 95; Cunningham v. Wrenn, 23 Ill. 64, 65; Lynch v. Colegate, 2 Har. & J. 34, 37; Holl v. Hadley, 4 Nev. & M. 515, 520; Bonser v. Cox, 4 Beav. 379, 384; U. S. v. Hillegas, 3 Wash. C. C. 70, 76, Fed. Cas. No. 15,366; Whitcher v. Hall, 5 Barn. & C. 269; Combe v. Woolf, 8 Bing. 156, 161. Again, the bond and the instrument of August 30, 1895, must be read, construed, and enforced together.    The contract of these parties consists of all the stipulations and agreements in both instruments.    Both instruments are parts of a single contract.    When they are so read, the agreement of these parties is found to contain mutual covenants,—a covenant of the employers· that they will invariably require the countersignature of their bookkeeper, Gribble, on all checks of Perry against their account, and a covenant of the

fidelity company that it will pay the losses resulting from the dishonest and fraudulent acts of Perry. Now, the plaintiffs have entirely failed to keep their covenant. Consequently they cannot enforce the fulfillment of the covenant of the fidelity company. He who commits the first substantial breach of a contract cannot maintain an action against the other contracting party for a subsequent failure to perform. Cattle Co. v. Martindale, 63 Fed. 84, 89, 11 C. C. A. 33, 38, 27 U. S. App. 277, 284, 285; Norrington v. Wright, 115 U. S. 188, 204, 205, 6 Sup. Ct. 12, 29 L. Ed. 366; Filley v. Pope, 115 U. S. 213, 6 Sup. Ct. 19, 29 L. Ed. 372; Rolling Mill Co. v. Rhodes, 121 U. S. 255, 261, 264, 7 Sup. Ct. 882, 30 L. Ed. 920; Beck & Pauli Lithographing Co. v. Colorado Milling & Elevator Co., 3 C. C. A. 248, 52 Fed. 700, 10 U. S. App. 465, 470; King Philip Mills v. Slater, 12 R. I. 82, 34 Am. Rep. 603; Smith v. Lewis, 40 Ind. 98; Hoare v. Rennie, 5 Hurl. & N. 19; Pope v. Porter, 102 N. Y. 366, 371, 7 N. E. 304; Dwinel v. Howard, 30 Me. 258; Robson v. Bohn, 27 Minn. 333, 344, 7 N. W. 357; Reybold v. Voorhees, 30 Pa. 116, 121; Stephenson v. Cady, 117 Mass. 6, 9; Branch v. Palmer, 65 Ga. 210; Fletcher v. Cole, 23 Vt. 114, 119."

These remarks are applicable to, and should control the decision of, this case.

It is further submitted that, if these views are erroneous, and if the mere adoption of a rule that one shall do an act, and ignorance whether it is complied with or not, constitute either the fulfillment, or a legal excuse for the failure to fulfill, a guaranty that he will perform it, then, by the same mark, the adoption of a rule by the defendant that the plaintiff's loss from the fraudulent or dishonest acts of the cashier shall be paid without the payment of it must constitute either a payment of that loss or a legal excuse for a failure to pay it, and the judgment ought not to require the defendant to do more than to adopt such a rule. It ought not to require it to pay the loss. The defendant should have the benefit of the rule applied to the plaintiff.